Michigan Supreme Court
Lansing, Michigan

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 16, 2008

ISKANDAR MANUEL, MAGGIE MANUEL,
JIMMY MANUEL, JOSEPH MANUEL, IMAD
MANUEL, AND ADEL MANUEL,

     Plaintiffs-Appellees,

v                           No. 131103

TIMOTHY J. GILL, CLINTON COUNTY,
EATON COUNTY, RUSTY BANEHOFF,
INGHAM COUNTY, EATON COUNTY
SHERIFF, CLINTON COUNTY SHERIFF,
KENNETH KNOWLTON, LANSING CHIEF OF
POLICE, CITY OF LANSING, LANSING
POLICE COMMISSION, JIMMY PATRICK,
AND INGHAM COUNTY SHERIFF,

     Defendants-Appellees

and

TRI-COUNTY METRO NARCOTICS SQUAD,
     Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

At issue in this case is: (1) whether defendant Tri-County Metro Narcotics

Squad (TCM) has standing to appeal the decision of the Court of Appeals despite

prevailing on every issue in that Court; (2) if so, whether TCM is a juridical entity subject to suit; and (3) whether TCM is a "state agency" that may only be sued in the Court of Claims. We conclude that, because TCM was aggrieved by the Court of Appeals decision, which permitted plaintiffs to bring a subsequent suit on the same grounds in a different court, TCM has standing to appeal that decision. We further conclude that TCM is a juridical entity subject to suit. Finally, we hold that TCM is not a state agency under MCL 600.6419(1)(a). Accordingly, the Court of Appeals erred in requiring suit to be filed in the Court of Claims. For these reasons, we affirm in part the judgment of the Court of Appeals, we reverse in part that judgment, and we remand this case to the Ingham Circuit Court for further proceedings in conformity with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The underlying events in this case unfolded in 1999, when plaintiff Iskandar Manuel agreed to assist TCM in combating area drug dealers. TCM, an entity formed under an interlocal agreement between various units of local, state, and federal government,[1] assisted Manuel in portraying himself as a drug dealer in

---

[1] TCM was created pursuant to an agreement between the Michigan State Police (MSP), the Ingham County Sheriff's Office, the Eaton County Sheriff's Department, the Clinton County Sheriff's Department, the Lansing Police Department, the East Lansing Police Department, the Lansing Township Police Department, and the Lansing office of the Federal Bureau of Investigation. The overarching responsibility for TCM rests in its command board; each of the signatories to the interlocal agreement appoints one representative to the command board. Day-to-day operations are run by a representative of the MSP.

2

order to earn the trust of local drug dealers and thereby secure evidence against them.

Although the partnership between Manuel and TCM existed for several years, the relationship ultimately soured. Manuel alleged that agents of TCM negligently exposed him and his family to danger by acting in such a manner that targeted drug dealers could readily deduce Manuel's cooperation with law enforcement. After several such alleged incidents, Manuel and members of his family filed the instant complaint in November 2003 in the Ingham Circuit Court. In an amended complaint, plaintiffs alleged 11 counts against TCM, various signatories to the interlocal agreement that created TCM, and several individuals associated with TCM. The complaint alleged that defendants had committed gross negligence, intentionally or negligently inflicted emotional distress on plaintiffs, violated plaintiffs' constitutional rights by subjecting them to a state-created danger, and breached an express or implied contract with plaintiffs. The only claim relevant in the instant case is the breach-of-contract claim.

The trial court granted summary disposition to defendants, holding that plaintiffs had failed to state a cause of action on all counts. With regard to the breach–of-contract claim, the trial court concluded that the statute of frauds, MCL 566.132(1)(b),[2] required a written agreement; because plaintiffs relied on an oral

---

[2] MCL 566.132 provides:

(. . . continued)

contract between Manuel and TCM, they failed to adequately substantiate their claim. The trial court dismissed plaintiffs' claims for failure to state a cause of action, and dismissed all 11 counts with prejudice.

The Court of Appeals affirmed, concluding that the trial court had properly dismissed the claims of gross negligence, infliction of emotional distress, and state-created danger. *Manuel v Gill*, 270 Mich App 355, 375, 380-381; 716 NW2d 291 (2006). With regard to the breach-of-contract claim, the Court of Appeals concluded that the trial court had erroneously determined that the statute of frauds was implicated. *Id*. at 376-377. However, "because the TCM is operated under the direction and supervision of the MSP, . . . the TCM is equivalent to a state agency." *Id*. at 377. Any claim brought against a state agency must be brought in the Court of Claims, not a circuit court. *Id*. at 377-378, citing MCL 600.6419. "Accordingly, albeit for the wrong reason, the trial court properly granted summary disposition for the TCM on the Manuels' breach of contract claim." *Id*.

---

(continued . . .)

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> * * *
>
> (b) A special promise to answer for the debt, default, or misdoings of another person.

4

at 378. Thus, the Court of Appeals permitted suit to be brought against TCM in the Court of Claims on the breach-of-contract claim.

Despite obtaining an affirmance of the trial court's dismissal in the Court of Appeals, TCM filed an application for leave to appeal in this Court, asking us to consider whether the Court of Appeals properly concluded that TCM is a "state agency." We denied the application for leave to appeal. 477 Mich 1067 (2007). However, we subsequently granted TCM's motion for reconsideration, vacated our previous order, and ordered oral argument on whether to grant the application. 480 Mich 929 (2007).[3]

## II. STANDARD OF REVIEW

"Whether a party has standing is a question of law that we review de novo." *Michigan Citizens for Water Conservation v Nestlé Waters North America, Inc*, 479 Mich 280, 291; 737 NW2d 447 (2007). We review de novo a trial court's grant of summary disposition. *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 83; 746 NW2d 847 (2008). We also consider questions of statutory and contractual

---

[3] We asked the parties to consider:

> (1) whether, in light of the statement in the Court of Appeals judgment that a breach of contract action against [TCM] was possibly viable in the Court of Claims, TCM was an aggrieved party entitled to appeal, despite the Court of Appeals affirmance of the Ingham Circuit Court's grant of summary disposition on all grounds; and (2) whether the Court of Appeals erred in ruling that TCM is equivalent to a state agency. [480 Mich 929 (2007).]

5

interpretation de novo. *Ross v Auto Club Group*, 481 Mich 1, 6; 748 NW2d 552 (2008); *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III. ANALYSIS

## A. APPELLATE STANDING

The first issue we must address is whether TCM has standing to appeal the decision of the Court of Appeals. In order to have appellate standing, the party filing an appeal must be "aggrieved." *People v Hopson*, 480 Mich 1061, 1061 (2008); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006). This requirement stems from the fact that this Court's "judicial power," established by Const 1963, art 6, § 1, extends only to "'a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the plaintiff has suffered a "particularized" or personal injury.'" *Federated*, *supra* at 292, quoting *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 615; 684 NW2d 800 (2004). This Court recently clarified the requirement that a party seeking appellate standing must be aggrieved:

> "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." . . . An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Federated*, *supra* at 291-292, quoting *In re Trankla Estate*, 321 Mich 478, 482; 32 NW2d 715 (1948).]

6

*Federated* further explained: "'"A party who could not benefit from a change in the judgment has no appealable interest."'" *Federated*, *supra* at 291 n 2, quoting *Ford Motor Co v Jackson (On Rehearing)*, 399 Mich 213, 226; 249 NW2d 29 (1976) (citation omitted).

What makes this case unusual is that the appellant, TCM, was a prevailing party in the Court of Appeals. That is, the Court of Appeals decided *each* issue in TCM's favor and affirmed the trial court's grant of summary disposition to TCM. Ordinarily, a party who prevails on every claim cannot be considered to be aggrieved by a court's ruling. However, a prevailing party may possess appellate standing if, despite the judgment in its favor, it has nonetheless suffered a concrete and particularized injury as a result of the Court of Appeals decision.

Given the disparities between the holdings of the trial court and the Court of Appeals, TCM suffered a concrete harm in the Court of Appeals, and hence, in our judgment, may fairly be considered to be an aggrieved party. The trial court held that plaintiffs' complaint was too conclusory and thus was insufficient to state a claim for breach of contract, and that the contract claim was further barred by the statute of frauds. Accordingly, it dismissed the contract claim with prejudice. On appeal, the Court of Appeals affirmed the dismissal of the contract claim, albeit on separate jurisdictional grounds. Although it held that the complaint was sufficient to state a claim and that the statute of frauds was inapplicable, it also concluded that plaintiffs' claim had to be filed in the Court of Claims because TCM is a

7

"state agency." *Manuel*, *supra* at 376-378. Accordingly, the Court of Appeals judgment permitted plaintiffs to refile the contract claims in the Court of Claims. Hence, before the Court of Appeals judgment, plaintiffs' lawsuit against TCM had been dismissed with prejudice; however, after this judgment, the contract claim was revived. Plaintiffs had only to file it in a different court and, in fact, subsequently did so. Because the decision of the Court of Appeals revived the contract claim, TCM was aggrieved by that decision and therefore has standing to appeal.[4]

## B. JURIDICAL ENTITY

TCM asserts that the suit against it should be dismissed because it is not a "juridical entity"-- that is, it is not an entity that can be rendered subject to suit. TCM was formed pursuant to the Urban Cooperation Act (UCA), MCL 124.501 *et seq*. Both the trial court and the Court of Appeals concluded that, under the UCA, TCM was subject to suit, relying on MCL 124.507(2), which states:

> A separate legal or administrative entity created by an interlocal agreement shall possess the common power specified in

---

[4] The most compelling objection to this conclusion is that any injury to TCM is merely hypothetical, because there was no certainty that plaintiffs would, in fact, sue TCM in the Court of Claims. To have standing, a party's injury must be "actual or imminent," not "conjectural or hypothetical." *Nat'l Wildlife Federation*, *supra* at 628. Whatever the merits of this argument immediately after the Court of Appeals decision, this argument is now moot because plaintiffs have already filed the contract claim against TCM in the Court of Claims. Hence, TCM's injury is not hypothetical; TCM is currently facing an actual lawsuit because of the Court of Appeals decision. Accordingly, TCM's injury is not conjectural or hypothetical.

8

the agreement and may exercise it in the manner or according to the method provided in the agreement. The entity may be, in addition to its other powers, authorized in its own name to make and enter into contracts, to employ agencies or employees, to acquire, construct, manage, maintain, or operate buildings, works, or improvements, to acquire, hold, or dispose of property, to incur debts, liabilities, or obligations that, except as expressly authorized by the parties, do not constitute the debts, liabilities, or obligations of any of the parties to the agreement, to cooperate with a public agency, an agency or instrumentality of that public agency, or another legal or administrative entity created by that public agency under this act, to make loans from the proceeds of gifts, grants, assistance funds, or bequests pursuant to the terms of the interlocal agreement creating the entity, and to form other entities necessary to further the purpose of the interlocal agreement. *The entity may sue and be sued in its own name*. [Emphasis added.]

TCM is a "separate legal or administrative entity created by an interlocal agreement." The second sentence of MCL 124.507(2) enumerates a range of activities that such an entity "may be . . . authorized" to undertake, such as entering contracts and acquiring buildings. The phrase "may be authorized" indicates that the entity is not necessarily entitled to undertake such actions; rather, the entity "may be authorized" to do so, but absent an authorization the entity would not be able to act.

In contrast to the second sentence of MCL 124.507(2), the third sentence simply states: "The entity may sue and be sued in its own name." This language indicates that an entity created pursuant to the UCA, such as TCM, may be sued. The third sentence does not contain the qualifying language of the second sentence, which lists certain activities in which an entity "may be *authorized*" to engage. This difference in language strongly suggests that the Legislature

intended to distinguish between activities that must be authorized and activities that do not require authorization. Because the third sentence of MCL 124.507(2) states categorically that an entity may sue and be sued, we conclude that TCM is a juridical entity subject to suit.

TCM raises two arguments against this conclusion. TCM first focuses on the term "may" in the third sentence: "The entity *may* sue and be sued in its own name." It argues that "may" indicates that an entity may be sued only if the agreement creating the entity so specifies. However, the term "may" is relevantly defined as being "used to express opportunity or permission . . . ." *Random House Webster's College Dictionary* (1997). In general, our courts have said that the term "may" is "permissive," *Murphy v Michigan Bell Tel Co*, 447 Mich 93, 120; 523 NW2d 310 (1994), as opposed to the term "shall," which is considered "mandatory," *People v Couzens*, 480 Mich 240, 250; 747 NW2d 849 (2008). In MCL 124.507(2), the term "may" indicates that an entity created by an interlocal agreement is susceptible to being held to account in a court of law. That is, MCL 124.507(2) first states, in the active voice, that an entity "may sue." This indicates that an entity is granted the discretionary ability to decide whether to bring suit. MCL 124.507(2) then uses the passive voice, stating that an entity "may be sued." This statement similarly indicates that persons suffering an injury from an entity are granted the discretionary ability to sue the entity. In other words, "may" here is permissive: it grants permission to persons injured to sue the entity. Because MCL 124.507(2) states that "[a]n entity may sue and be sued in its own name," the

10

Legislature has signaled that such an entity may potentially be sued and is susceptible to suit.[5]

TCM also argues that the interlocal agreement must specifically authorize suit under MCL 124.505(c), which states:

> A joint exercise of power pursuant to this act shall be made by contract or contracts in the form of an interlocal agreement which may provide for:
>
> * * *
>
> (c) The precise organization, composition, and nature of any separate legal or administrative entity created in the interlocal agreement with the powers designated to that entity.

TCM contends that because the contract creating the entity "may provide for . . . [t]he precise organization, composition, and nature" of the entity, the formative contract must specify every aspect of such an entity; in particular, before an entity may be brought to court, the interlocal agreement must specify that the entity is subject to suit, for otherwise the "nature" of the entity would not permit a legal action against it. However, TCM's reliance on MCL 124.505(c) is, in our judgment, misplaced, because that statute states *generally* that aspects of an entity's nature may be specified in the interlocal agreement; on the other hand,

_____

[5] Moreover, as argued above, MCL 124.507(2) distinguishes between activities that must be "authorized" before an entity may undertake them and activities that do not require such authorization. Essentially, TCM asks this Court to rewrite the statute to include the permission to sue and be sued in the list of activities that must be authorized. However, "our job is not to rewrite the statute and we direct plaintiff to the Legislature for any relief that might be forthcoming." *Numerick v Krull*, 265 Mich App 232, 235; 694 NW2d 552 (2005).

11

MCL 124.507(2) states *specifically* that at least one aspect must be understood as characterizing an entity-- namely, that it "may sue and be sued." Thus, even if we assume that the amenability to suit can be described as an aspect of an entity's "nature," because the more specific provision prevails over the more general, *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 181; 730 NW2d 722 (2007), MCL 124.505(c) does not suggest that specific authorization is required before suit may be brought against TCM.

## C. STATE AGENCY

Because TCM is a juridical entity subject to suit, we must now consider TCM's final argument, that the Court of Appeals erroneously held that TCM was a "state agency" and thereby subject to suit in the Court of Claims. MCL 600.6419(1)(a) of the Revised Judicature Act (RJA) indicates that the Court of Claims has exclusive jurisdiction "[t]o hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Hence, if the Court of Appeals correctly concluded that TCM is a "state agency," then jurisdiction was proper only in the Court of Claims, barring any other law to the contrary. TCM contends that it is not a state agency, and hence that plaintiffs' original suit may proceed as originally filed in the Ingham Circuit Court.

The RJA does not define the term "state agency." Although the dictionary relevantly defines "agency" as "a government bureau or administrative division," *Random House Webster's College Dictionary* (1997), this definition does not

12

afford guidance in distinguishing between what is a bureau or division of the government and what is not, and hence ultimately is not helpful.

The meaning of statutory terms may also be deduced from their context, under the principle of *noscitur a sociis*. *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007). A court does not "construe the meaning of statutory terms in a vacuum." *Tyler v Cain*, 533 US 656, 662; 121 S Ct 2478; 150 L Ed 2d 632 (2001). "Rather, we interpret the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id*., quoting *Davis v Michigan Dep't of Treasury*, 489 US 803, 809; 109 S Ct 1500; 103 L Ed 2d 891 (1989). "'It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.'" *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421-422; 662 NW2d 710 (2003), quoting *Third Nat'l Bank in Nashville v Impac Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

Here, MCL 600.6419(1)(a) lists the following state entities: "departments, commissions, boards, institutions, arms, or agencies." State law establishes various "departments," such as the Department of State, MCL 16.125, the Department of the Attorney General, MCL 16.150, and the former Department of Labor, MCL 16.475, which is now the Department of Labor and Economic Growth. Numerous laws create "commissions," such as the former Michigan Superconducting Super Collider Commission, which subsequently had its powers and duties transferred to the Department of Labor and Economic Growth. MCL

13

3.814(1); MCL 3.821. State law also creates a "state board of assessors." MCL 207.1. The University of Michigan is designated an "institution" under MCL 390.1. Although we are unaware of any law creating an "arm" of the state, we note that the term is commonly defined as "an administrative or operational branch of an organization: *an investigative arm of the government.*" *Random House Webster's College Dictionary* (1997). These statutes indicate that the other terms listed in MCL 600.6419(1)(a) besides "agencies" commonly refer to entities created by state law, thereby suggesting that one aspect of a state agency is that it is created pursuant to state law.

Another statute sheds further light on the meaning of "state agency." MCL 600.6458 explains how a judgment against a state entity in the Court of Claims should be paid:

> (1) In rendering any judgment against the state, or any department, commission, board, institution, arm, or agency, the court shall determine and specify in that judgment the department, commission, board, institution, arm, or agency from whose appropriation that judgment shall be paid.

> (2) Upon any judgment against the state or any department, commission, board, institution, arm, or agency becoming final, . . . the clerk of the [Court of Claims] shall certify to the state treasurer the fact that that judgment was entered . . . and the claim shall thereupon be paid from the unencumbered appropriation of the department, commission, board, institution, arm, or agency if the state treasurer determines the unencumbered appropriation is sufficient for the payment. In the event that funds are not available to pay the judgment . . . , the state treasurer shall instruct the clerk of the court of claims to issue a voucher against an *appropriation made by the legislature* for the payment of judgment claims . . . . [Emphasis added.]

14

A judgment against a "state agency" is paid out of the "appropriation" made to or for the agency by the Legislature. MCL 600.6458 thus indicates that a state agency receives funding from the state government, through an act of the Legislature. Thus, a second aspect of a state agency for purposes of MCL 600.6419(1)(a) is that such an agency is funded, at least in part, by the state government.

In addition to considering relevant statutes to ascertain the meaning of "state agency," we should also consider prior case law. In *Hanselman v Wayne Co Concealed Weapon Licensing Bd*, 419 Mich 168; 351 NW2d 544 (1984), we considered whether a concealed weapons licensing board was a "state board" under the Administrative Procedures Act of 1969 (APA), which defines "agency" as "a state . . . board . . . created by the constitution, statute, or agency action." MCL 24.203(2).[6] Because it was undisputed that the board at issue had been "created by . . . statute," *Hanselman*, *supra* at 183, the critical issue in *Hanselman* was whether the board was a "state" board. To make this determination, *Hanselman* adopted a general test, addressing "the characteristics of the board, the relationship between the board and the state, and the functions performed by the board." *Id*. at 184. *Hanselman* argued that the board did not have the

---

[6] Although *Hanselman* addressed the APA, and not the RJA, which is at issue in this case, it did consider whether a board was a "state" board. Similarly, the critical issue here is whether TCM-- which assuredly is an "agency" of some sort-- is a "state" agency. Because *Hanselman* addressed a similar issue, we find *Hanselman* pertinent to this case.

15

characteristics of a state entity because only one of its three members was a state official and the board acted by majority vote,[7] the statute granted wide discretion to the board, the board had only local jurisdiction, and each board acted independently of any other concealed weapons licensing board. *Id*. at 187-192. *Hanselman* then argued that the relationship between the board and the state did not indicate that the board was a state entity, because no state agency controlled the decisions of the individual boards, each board exercised wide discretion, and the state did not control the participating local officials. *Id*. at 193-195. Finally, *Hanselman* contended that the board did not serve state functions because "a majority of the concealed weapons licensing board members [are] local officials who exercise their discretion according to local consideration." *Id*. at 196. For these reasons, *Hanselman* concluded that a concealed weapons licensing board was not a "state board." *Id*. at 196-197.

This review of *Hanselman* reveals substantial overlap in the relevant factors identified. Accordingly, we consider it necessary to refine the test enunciated in that case. In our judgment, *Hanselman* focused on two discrete inquiries: first, whether the state ultimately controlled the board, either through statutes that restricted a board's discretion or through a state employee's exercise of power on

---

[7] The licensing board consisted of the director of the Department of State Police, the county prosecuting attorney, and the county sheriff. *Id*. at 188.

the board; and, second, whether the purposes served by the entity focused on local interests or statewide interests.

In light of the relevant statutes and *Hanselman*, we conclude that a reviewing court should consider the following factors to determine if an entity is a state agency under MCL 600.6419(1)(a): (1) whether the entity was created by the state constitution, a state statute, or state agency action;[8] (2) whether and to what extent the state government funds the entity; (3) whether and to what extent a state agency or official controls the actions of the entity at issue; and (4) whether and to what extent the entity serves local purposes or state purposes. This test essentially constitutes a "totality of the circumstances" test to determine the core nature of an entity, see *Hanselman*, *supra* at 186-187, i.e., whether it is predominantly state or predominantly local; hence, the fact that one factor suggests that the entity is an agency of the state is not necessarily dispositive.

Applying this test, we conclude that TCM is not a state agency. First, TCM was created pursuant to an agreement between various local entities, as well as the MSP and the Federal Bureau of Investigation. Hence, TCM was not specifically created by any state constitutional provision, state statute, or state agency action;

---

[8] We note that *Hanselman* concluded that the fact that an entity had been created by a state statute did not necessarily require a finding that the entity was a "state" entity. *Hanselman*, *supra* at 187. We agree that this factor is not dispositive; however, when an entity is created not by a state statute but pursuant to local action, as is the case here, this fact suggests that the entity is not a "state" entity.

rather, local actors were required to take affirmative steps to create TCM. Accordingly, this first factor suggests that TCM is a local entity.

Second, TCM is not ultimately controlled by any state entity or official. Although the MSP exercises control over the daily operations of TCM, all of TCM's activities are subject to the ultimate control of the command board, which is composed of a representative from each of the entities that created TCM. This command board acts by majority vote. Because only one state official sits on the command board, the state cannot unilaterally exercise control over TCM's activities. Rather, TCM is preponderantly governed by local officials. Accordingly, the second factor suggests that TCM is a local entity, not a state entity.

Third, according to the briefs of the parties, TCM is not funded by the state government, thereby further suggesting that TCM is not a state agency.[9]

Finally, TCM primarily serves predominantly local purposes. The object of TCM is to fight drug distribution within three counties: Ingham, Clinton, and Eaton. Indeed, the very name, "*Tri-County* Metro Narcotics Squad," indicates the local purpose of TCM. Although one could obviously argue that suppression of drug distribution in these counties will also have a salutary effect on the state as a whole, the primary purpose of TCM is to deter local drug distribution, for the

---

[9] However, state employees of the MSP who work with TCM are paid with state funds. This limited use of state money does not, in our judgment, detract from the conclusion that TCM itself is not principally funded by the state.

benefit of the local community.  Accordingly, this factor also suggests that TCM is not a state agency.

In light of the foregoing factors, we conclude that TCM is not a state agency, and thus plaintiffs were not required to file suit in the Court of Claims. Rather, plaintiffs properly filed the instant suit in the Ingham Circuit Court.

## IV. CONCLUSION

We conclude that TCM, despite being the prevailing party in the Court of Appeals, has standing to appeal the decision of that Court because it was nonetheless aggrieved by the Court of Appeals decision.  Moreover, we agree with the Court of Appeals that, under MCL 124.507(2), defendant TCM is a juridical entity that is subject to suit.  Finally, we conclude that the Court of Appeals erred in concluding that TCM is a "state agency" under MCL 600.6419(1)(a).  Instead, we hold that TCM is not a state agency, and thus plaintiff was not required to file suit in the Court of Claims.  Accordingly, we affirm the judgment of the Court of Appeals in part, reverse it in part, and remand this case to the Ingham Circuit Court for further proceedings consistent with this opinion.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

19

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

ISKANDAR MANUEL, MAGGIE
MANUEL, JIMMY MANUEL, JOSEPH
MANUEL, IMAD MANUEL, and ADEL
MANUEL,

       Plaintiffs-Appellees,

v                                                                No. 131103

TIMOTHY J. GILL, CLINTON COUNTY,
EATON COUNTY, RUSTY BANEHOFF,
INGHAM COUNTY, EATON COUNTY
SHERIFF, CLINTON COUNTY SHERIFF,
KENNETH KNOWLTON, LANSING
CHIEF OF POLICE, CITY OF LANSING,
LANSING POLICE COMMISSION,
JIMMY PATRICK, and INGHAM
COUNTY SHERIFF,

       Defendants-Appellees,

and

TRI-COUNTY METRO NARCOTICS
SQUAD,

       Defendant-Appellant.

_____

KELLY, J. (*concurring in the result only*).

The majority decides that defendant Tri-County Metro Narcotics Squad

(TCM) is (1) an aggrieved party able to prosecute this appeal and (2) a juridical

entity capable of being sued, but (3) not a state agency. I do not disagree with any

of these conclusions. But I cannot sign the majority opinion because, in my view, it goes one bridge too far.

Whether a prevailing party can prosecute an appeal is an interesting legal issue. In the ordinary case, it would engender strong arguments from both sides. But not here. In this case, all parties agree that TCM is an aggrieved party capable of maintaining this appeal. As a result, standing is not a disputed issue that needs to be resolved. Moreover, there is an utter lack of advocacy for the position that TCM lacks standing.

Because of the absence of argument on one side of this nonissue, this case is not a good vehicle for creating broad precedent about it. Accordingly, I believe that we should decide the issues that have been presented and wait for a case in which standing is contested and there is advocacy by both sides. Because the majority disagrees with my assessment and finds it necessary to engage in a lengthy discussion of standing, I concur only in the result of the opinion.

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver

2