# STATE OF MICHIGAN

# COURT OF APPEALS

RANCH RHEAUME, LLC,

Plaintiff-Appellant,

v

DEPARTMENT OF AGRICULTURE,
DEPARTMENT OF NATURAL RESOURCES,
and STATE OF MICHIGAN,

Defendants-Appellees.

UNPUBLISHED
March 17, 2015

No. 317631
Court of Claims
LC No. 12-000121-MM

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals the trial court's order that granted defendants summary disposition pursuant to MCR 2.116(C)(7). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In August 2008, defendant Department of Natural Resources ("DNR") notified the public that it had confirmed the first case of Chronic Wasting Disease ("CWD") in Michigan at a deer-breeding facility in Kent County. CWD is a fatal and contagious neurological illness that affects deer and elk. The disease causes a spongy degeneration of the brain of an infected animal, which results in emaciation, abnormal behavior, loss of bodily functions, and death. There is no treatment or vaccine for the ailment. Though scientists do not believe that CWD can be transmitted to humans, hunters have been cautioned not to eat animals that appear to have CWD symptoms or have tested positive for the disease.

To halt the spread of CWD in the state, DNR and defendant Michigan Department of Agriculture ("MDA") instituted a statewide quarantine of all deer- and elk-breeding facilities, and banned the movement of all privately owned deer, elk, and moose. This quarantine applied to plaintiff's elk-breeding facility, and curtailed his operations. Defendants classified plaintiff's facility as having a high risk of CWD infections because, among other things, it did not comply with certain provisions of MCL 287.951 *et seq.*, which regulates the operation of privately owned elk-breeding facilities in Michigan. Defendants quarantined plaintiff's facility in early September 2008, and released the quarantine on September 18, 2009.

-1-

According to plaintiff, the quarantine "decimated" his business and caused a number of his elk to die. He brought suit against defendants on September 17, 2012 in the Court of Claims, and alleged that defendants: (1) violated his right to due process and equal protection; and (2) committed an inverse condemnation or taking. Defendants asked the court to dismiss plaintiff's suit under MCR 2.116(C)(7) and (C)(10). Among other things, defendants argued that the statute of limitations under MCL 600.6452(1) barred plaintiff's claims, because he failed to bring them within the applicable period.

In a series of written orders,[1] the Court of Claims granted defendants' motion, and held that plaintiff's suit was barred by the statute of limitations.[2] On appeal, plaintiff raises the same claims described above, and also asserts, for the first time in this appeal, that defendants committed "constitutional torts" against him.[3]

## II. STANDARD OF REVIEW

"We review de novo a decision by the Court of Claims on a motion for summary disposition and issues requiring statutory interpretation." *Brunswick Bowling & Billiards Corp v Dep't of Treasury*, 267 Mich App 682, 684; 706 NW2d 30 (2005). A motion for summary disposition is granted pursuant to MCR 2.116(C)(7) when undisputed facts establish that an action is barred by the statute of limitations. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). A party may support such a motion with affidavits, depositions, admissions, or other evidence. *Id*.

## III. ANALYSIS

### A. THE COURT OF CLAIMS ACT

Before we analyze the dispositive procedural requirement that plaintiff failed to follow, we note that we do not address the merits (or lack thereof) of plaintiff's numerous claims against defendants. Instead, this case requires us to interpret the procedural mandates of the Court of

---

[1] In its orders that granted defendants summary disposition, the Court of Claims either did not specify under which subrule it granted summary disposition, or stated that it did so under MCR 2.116(C)(10). However, the court based the analysis of each order on how plaintiff's claims were barred by the statute of limitations. The court therefore essentially ordered summary disposition under MCR 2.116(C)(7), the subrule that permits summary disposition when a claim is barred by the statute of limitations.

[2] The trial court also ruled that plaintiff's claims lacked merit as a matter of law, regardless of whether his claims were barred by the statute of limitations.

[3] Because plaintiff failed to raise his "constitutional tort" claim in the proceedings before the Court of Claims, it is unpreserved and we need not address it. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). In any event, plaintiff's failure to preserve this issue is inconsequential, because *all* of his claims—including his constitutional tort claim—fail for other reasons that we explain in detail later in the opinion.

Claims Act, MCL 600.6401, *et seq.*, which governs proceedings in the Court of Claims. "When interpreting a statute, courts must ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. This requires courts to consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Fradco, Inc v Dept of Treasury*, 495 Mich 104, 112; 845 NW2d 81 (2014) (quotation marks omitted).

"MCL 600.6419(1)(a) . . . indicates that the Court of Claims has exclusive jurisdiction '[t]o hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies.' " *Manuel v Gill*, 481 Mich 637, 649; 753 NW2d 48 (2008).[4] All suits brought before the Court of Claims are subject to the procedural rules specified in the broader Court of Claims Act, MCL 600.6401, *et seq.* If a person or entity intends to file a claim against the state, it must, "within 1 year after such claim has accrued"[5]:

> file[] in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths. [MCL 600.6431(1).]

Parties that wish to sue the state for "property damage or personal injuries" are subject to a separate notice requirement, which stipulates that the claimant must "file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action." MCL 600.6431(3).

---

[4] 164 PA 2013 amended the language of MCL 600.641a(1)(a) to read:

> [The court has the power and jurisdiction] [t]o hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court.

Because 164 PA 2013 did not take effect until November 2013, after the initiation of this suit, we analyze this case under the older statutory language quoted above.

[5] MCL 600.5827 further specifies that "the period of limitations runs from the time the claim accrues. The claim accrues . . . at the time the wrong upon which the claim based was done regardless of the time when damage results."

In addition to these notice requirements, the Court of Claims Act also contains its own statute of limitations, which acts as an absolute procedural bar to any claims brought against the state after the specified limitation period has expired:

> Every claim against the state, cognizable by the court of claims, shall be forever barred unless the claim is filed with the clerk of the court or suit instituted thereon in federal court as authorized in [MCL 600.6440] within 3 years after the claim first accrues. [MCL 600.6452(1).]

"[I]t is well established that the Legislature may impose reasonable procedural requirements, such as a limitations period, on a plaintiff's available remedies even when those remedies pertain to alleged constitutional violations." *Rusha v Dept of Corrections*, 307 Mich App 300, 307; ___ NW2d ___ (2014). The procedural rules and limitations period contained in the Court of Claims Act are such "reasonable procedural requirement[s]." *Id*. at 310. Accordingly, a plaintiff who makes a constitutional claim against the state must nonetheless comply with the procedural mandates of the Court of Claims Act—he is not excused from compliance by virtue of the fact that his action involves a constitutional issue. *Id*. at 311–312.

## B. APPLICATION

Here, by his own admission, plaintiff failed to comply with any of the procedural rules described above—a failure that is fatal to his claims. Moreover, his suit is barred by the statute of limitations contained in MCL 600.6452(1). The "wrongs" of which plaintiff complains—i.e., "the happening of the event giving rise to [plaintiff's] cause of action"[6]—took place either in September 2008, when defendants quarantined his elk ranch,[7] or in February 2009, when defendants released a purportedly similar elk ranch from quarantine, but kept plaintiff's ranch under quarantine.[8] In other words, for purpose of the Court of Claims Act, plaintiff's claims "accrued"[9] in either September 2008 or February 2009.

Accordingly, to sustain his action in the Court of Claims, plaintiff was required to: (1) file notice with the court that he intended to file suit against defendants for "property damages" within 6 months of September 2008 and/or February 2009, pursuant to MCL 600.6431(3); and (2) actually file suit against defendants within 3 years of September 2008 and/or February 2009, pursuant to MCL 600.6452(1).

Plaintiff did neither of these things. At no time did he file notice of intent to bring suit against the state for property damages, as MCL 600.6431(3) required him to do. And he

---

[6] MCL 600.6431(3). See also MCL 600.5827.

[7] Plaintiff bases his due process, takings, and unpreserved constitutional tort claims on defendants' quarantining of his ranch.

[8] Plaintiff bases his equal protection claim on defendants' release from quarantine of a supposedly "similarly situated" ranch in February 2009.

[9] See n 5, supra.

ultimately initiated this action in September 2012—well over 3 years *after* his claim accrued in either September 2008 or February 2009. His arguments to the contrary have no merit, and willfully ignore Michigan case law and the plain language of the Court of Claims Act.[10] The trial court therefore correctly granted summary disposition to defendants pursuant to MCR 2.116(C)(7).

Affirmed.

/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

---

[10] Plaintiff incorrectly contends that the common law "continuing wrongs" doctrine permits him to ignore the statutory mandates of MCL 600.6431(3) and MCL 600.6452(1). In so doing, he ignores both: (1) the plain meaning of the Court of Claims Act, which, as a statute, supersedes any accrual doctrines applied at common law; and (2) the fact that the "continuing wrongs" doctrine has been repudiated by the Michigan Supreme Court and is no longer the law of this state. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 288; 769 NW2d 234 (2009). ("*Garg* [*v Macomb Co Community Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005)] and its progeny completely and retroactively abrogated the common-law continuing wrongs doctrine in the jurisprudence of this state").