# STATE OF MICHIGAN

# COURT OF APPEALS

---

ASAM HIRMIZ,

        Plaintiff-Appellant,

v

JAUST, LLC, and JANE SAMUEL,

        Defendants-Appellees.

UNPUBLISHED
September 11, 2018

No. 337269
Oakland Circuit Court
LC No. 2016-152808-CB

---

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the order requiring him to pay the net amount of $15,142, dissolving defendant Jaust, LLC, pursuant to MCL 450.4801, liquidating the company assets, using the remaining funds to satisfy the company's debts, and distributing any leftover amount to the parties, with defendant Jane Samuel receiving a 51% share and plaintiff receiving a 49% share. We affirm.

This case arises out of a joint business venture between Hirmiz and Samuel, who are first cousins. Samuel is an Australian citizen residing in the U.S. on an E-2 visa. Hirmiz and Samuel decided to go into business selling Australian clothing and opened a dress shop at 311 East Maple Road in Birmingham. Jaust, LLC, was formed on March 30, 2015. Originally, Hirmiz and Samuel were going to share a 50/50 ownership interest, but because Samuel alleged that she needed a majority ownership in order to satisfy her visa requirements, the operating agreement provided for a 51% to 49% ownership interest for Samuel and plaintiff, respectively. The seven-year lease, which Hirmiz and Samuel personally guaranteed, was signed in June of 2015, while Samuel was still in Australia awaiting approval of her E-2 visa. The following month, plaintiff began the buildout of the dress shop, and in August, Samuel arrived from Australia. The retail outlet was opened in October of the same year. At some point, a 2014 Jeep Cherokee became a business asset of Jaust, LLC.

Up until the underlying dispute, Samuel had been managing the store and plaintiff had been involved "behind the scenes" by handling payroll and other administrative tasks, including making changes to the website that maintained the business's clothing inventory. At some point around January of 2016, the relationship between the parties deteriorated. Plaintiff argues Samuel got angry after he challenged her for spending company money on a personal trip, which included travel to Australia, Las Vegas, and Cancun. Samuel, however, argues that plaintiff got

-1-

angry when she rebuffed his romantic advances. Plaintiff testified that in March of 2016, he was prevented from accessing the store because Samuel had changed the locks on him.

On May 4, 2016, plaintiff filed a complaint alleging that Samuel had violated MCL 450.4515 and her duties pursuant to the operating agreement when she unilaterally: (1) locked plaintiff out of all of Jaust LLC's social media accounts and computer equipment, (2) removed the business's alarm system, such that plaintiff was prevented from detecting when she was onsite, (3) refused to communicate with plaintiff, (4) paid employees "under the table" without withholding taxes, (5) prevented plaintiff's access to company books and records, (6) changed the resident agent from plaintiff to herself, (7) updated the articles of organization to indicate that the business was now managed by the "manager," (8) drove, and continued to drive, a 2014 Jeep that is titled in the company's name, and (9) made decisions to pay for her personal matters with company funds. Accordingly, plaintiff sought several forms of relief from the trial court, which included, as relevant to the issue on appeal, the dissolution and liquidation of Jaust, LLC, and monetary damages for plaintiff's losses.

On June 3, 2016, defendants answered the complaint generally denying all of the allegations. On June 13, 2016, plaintiff filed a motion for a preliminary injunction seeking access to the business premises, business records, business accounts, including online access, and the voiding of the amendment to the articles of organization that mandated that the business be managed by Samuel.

On June 28, 2016, defendants filed a response to plaintiff's motion for preliminary injunction arguing that the injunction was unnecessary as Samuel had not violated the operating agreement because of her large financial contribution to the company, and her 51% majority allowed her to manage the business's day-to-day operations. Accordingly, as defendants explained, plaintiff's claim was unlikely to succeed on its merits and there was no irreparable harm from her handling of the business.

Also on June 28, 2016, the trial court granted plaintiff's motion for a preliminary injunction and ordered that (1) plaintiff be given access to all business, financial, and online accounts, (2) plaintiff receive keys, and have access, to the retail location, (3) neither party act in a harassing manner towards each other or other employees, and (4) Samuel file a certificate of correction with the state regarding the improper amendment to the articles of organization.

In September of 2016, plaintiff learned that Samuel had recently flown to Australia, so he drove to the airport where he presumed the company's Jeep Cherokee would be parked. After locating the vehicle in the airport parking lot, he drove it home using a spare key. On November 4, 2016, plaintiff sold the Jeep, still titled in the name of Jaust, LLC, for $11,500. Plaintiff testified that he had used $717 of the sale proceeds to partially pay the balance of a credit card held in the name of Jaust, LLC, and applied the rest towards his personal credit with which he had been financing the legal action against defendants. Plaintiff testified that he sold the Jeep for $11,500 instead of accepting offers that ranged from $13,000 to 16,000 because it was the highest cash offer, and he "couldn't take a check because if [he] took a check, [he] would have to deposit it into the business account. If [he] did that, then [Samuel] would transfer that money out into her personal account."

On October 19, 2016, the trial court entered a stipulated order appointing a receiver for Jaust, LLC. However, a receiver was never found who would accept the trial court's appointment and, therefore, was never actually appointed.

On December 8, 2016, a bench trial was held, which will be discussed in more detail *infra*. At the trial's conclusion on December 9th, the court stated:

> In order [for Samuel] to meet the immigration requirements, she was also required to invest $100,000 into the business.
>
> The testimony is clear that she used artifice, fraud, and deception to reach the $100,000 figure . . . one of the exhibits introduced by the plaintiff, shows that she was utilizing airline tickets to Vegas and Cancun and taking that out of the business or using that as part of an investment into the business. And it's clear that those trips really had absolutely nothing to do with the business. . . . There [were] a lot of personal expenses in her testimony that she was using to meet the $100,000 investment [figure].
>
> Her actual cash investment into the business, according to the testimony, was $37,000; and Mr. Hirmiz's actual cash contribution was about $30,000[.]
>
> \* \* \*
>
> [A]t some point, Ms. Samuel decided this was going to be her business and she was going to conspire to keep Mr. Hirmiz somewhat out of it. And she began paying herself a salary of $4,000. She ended up taking $24,000 out of the business.
>
> The operating agreement indicated that any distributions were to be made at 51 percent to Ms. Samuel and 49 percent to Mr. Hirmiz.
>
> The Court makes a determination that the distribution -- or the salary was, in fact, a distribution and that while she took 24,000, Mr. Hirmiz was also due then a 49 percent distribution. So if she took $24,000, he gets $23,058, which would be . . . 51/49. He took $3,700.[1] So the business owes him $19,358.
>
> Having said that, Mr. Hirmiz at some point decided that he was going to convert corporate property to his own. His testimony is extremely clear and he admits it, and I give him credit for admitting that he basically stole the Jeep, sold it for $11,500, and did not put that money into the business because he was afraid Ms. Samuel would write a check out of the business to herself . . . so that number

---

[1] During trial, plaintiff acknowledged that he took $3,300 in disbursements in an effort to recover some of the money he felt he was owed. Accordingly, it appears that the trial court erred when it stated that plaintiff "took $3,700." However, plaintiff does not challenge this point on appeal.

is trebled. So he would owe the $11,500 plus the trebling, which is $34,500, for a total of owing the business $46,000. But . . . the business owes him $19,358. So he owes the business $26,642.

\* \* \*

[Y]ou were both using this business as your own piggy bank. And you shouldn't have done that.

\* \* \*

I find both of your testimony inherently incredible, to be perfectly honest.

On December 28, 2016, the trial court entered a judgment that stated plaintiff owed the net amount of $26,642 to Jaust LLC.

On January 18, 2017, plaintiff filed a motion seeking a new trial or amended judgment pursuant to MCR 2.611 (M). In the motion, plaintiff argued that the trial court should not have assessed treble damages whatsoever; however, since the trial court had, it erred because the award essentially quadrupled the price of the Jeep sale. Further, plaintiff argued that the trial court failed to properly award damages for Samuel's violation of MCL 450.4515[2].

On January 27, 2017, defendants responded contending that plaintiff had abandoned his arguments because he failed to provide the trial court with the trial transcripts. Notwithstanding the abandonment, defendants argued that the $46,000 award was substantially equivalent to treble damages of $15,000, which was the amount of an offer made by a potential buyer, but which plaintiff rejected. Defendants further contended that the trial court was under no obligation to award damages pursuant to MCL 450.4515.

On February 8, 2017, a motion hearing was held regarding plaintiff's motion for a new trial or amended judgment where the parties argued consistently with their briefs. On the issue of treble damages, plaintiff argued that the trial court's original finding that plaintiff owed $46,000 was in error, as this was a quadrupling of the $11,500 sale price. As plaintiff averred, the proper amount should have been $34,500. Defendants did not address the treble argument directly; instead, defendants argued that the price of the Jeep should have been set at $15,000 based on the trial testimony. Accordingly, defendants argued that, if the trial court was inclined to reduce the amount, then the correct amount should be $45,000, i.e., three times $15,000. The

---

[2] MCL 450.4515, which will be discussed in greater detail below, allows for a limited liability company member to recover damages for "acts of the managers or members in control" that are "illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member." MCL 450.4515(1).

trial court stated, "I think I was wrong. So I'll reduce the judgment to $34,500, which is treble damages on the $11,500."

On the issue of whether the trial court should have awarded plaintiff additional damages, plaintiff argued that there was $8,769 in unaccounted cash that Samuel took after locking him out of the store. Defendants argued that all the cash had been accounted for. The trial court held that it would not adjust the damages beyond the treble damages issue stated above. Specifically, the trial court stated, "I did make the one mistake on the conversion. The other stuff I took into consideration and I came to a decision. That's the decision of the Court. If you don't like it, the Court of Appeals is up the street."

On February 13, 2017, the trial court entered an order and an amended final judgment consistent with its ruling, which reduced the gross amount that plaintiff owed from $46,000 to $34,500, and thus, reduced the net amount that plaintiff owed Jaust, LLC, to $15,142.

On appeal, plaintiff argues that the trial court erred by (1) finding that he owed treble damages for converting company property, (2) refusing to award him additional damages pursuant to MCL 450.4515, and (3) not awarding him damages based on cash receipts that were not deposited into the business account. We disagree.

"The proper interpretation and application of a statute is a question of law, which we review de novo." *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 533; 907 NW2d 611 (2017) (citation omitted). "[A] trial court's findings of fact are reviewed for clear error." *Hastings Mut Ins Co v Grange Ins Co of Michigan*, 319 Mich App 579, 587; 903 NW2d 400 (2017). "This Court reviews the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). A decision is clearly erroneous when the reviewing court is left with a "definite and firm conviction that a mistake has been made." *Id*. at 512.

## I. CONVERSION

Plaintiff first argues that the trial court erred when it awarded treble damages related to his conversion of the Jeep to his personal use because conversion was never raised in the pleadings. We disagree.

During trial, plaintiff admitted that he intentionally took the Jeep, which he knew was company property, from where Samuel had parked it and then sold the Jeep for $11,500, in order to recover funds that he felt defendants owed him. When the trial court rendered its decision, it stated:

> [Plaintiff] decided that he was going to *convert* corporate property to his own. His testimony is extremely clear and he . . . that he basically stole the Jeep, sold it for $11,500, and did not put that money into the business [account] . . . so that number is *trebled*. [Emphasis added.]

As an initial matter, we point out that conversion, in statutory or common-law form, was never raised in the pleadings by either party. Notwithstanding the pleadings, it appears from the record that, despite the fact that the trial court did not state so explicitly,[3] it had relied on Michigan's conversion statute, MCL 600.2919a, when it computed damages to include the tripled value of the Jeep's sale price of $11,500. MCL 600.2919a states, in relevant part:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

> * * *

> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Statutory conversion requires a showing that a person converted the property "to [his] own use." *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 358-359; 871 NW2d 136 (2015). The purpose of the conversion statute is not merely to restore the plaintiff to his or her original condition, but to penalize the converting offender by authorizing treble damages. *New Properties, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 137; 762 NW2d 178 (2009).

As plaintiff freely acknowledged at trial, he took the Jeep and drove it back to his home, at which point he had converted it to his personal possession instead of that of the LLC. He then proceeded to sell the Jeep and used the funds to pay personal accounts—thus, completing the absolute conversion of corporate property for his own use. Therefore, the essential issue remaining is whether the trial court erred in applying treble damages despite the fact that defendants never raised statutory conversion in the pleadings. On appeal, plaintiff does not provide relevant authority that would persuade this Court to conclude that the trial court clearly erred. We hold that Jaust, LLC, would have been entitled to the treble damages had it initiated the claim within the pleadings, as the conversion statute allows for the recovery to be "in addition to any other right or remedy the person may have at law or otherwise." See MCL 600.2919a(2).

As to a legal remedy, MCR 2.118(C)(1) permits the trial court's decision. Specifically, MCR 2.118(C)(1) states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that

---

[3] The trial court also stated to Samuel, "why you didn't go to the police for theft is beyond me, but I'm going to deal . . . with that later."

case, amendment of the pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment.

At trial, both parties addressed the fact that plaintiff converted the vehicle, thereby impliedly consenting to the issue, and therefore, the treble-damage issue should be treated as if it had been raised by the pleadings. See *id*. Specifically, plaintiff testified that the Jeep was a "company car," that he sold it for $11,500, and that he used those proceeds to reimburse himself for personal attorney fees. The trial court questioned plaintiff as to whether Samuel, as a majority member, had given him permission to sell the Jeep, to which plaintiff responded that she had not. Defendants emphasized in their questioning that although plaintiff had a key for the Jeep, it was an asset of Jaust, LLC, and further, that he sold the Jeep without getting Samuel's permission. Further, defendants repeatedly questioned plaintiff as to the manner he sold the Jeep, placing emphasis on the fact that plaintiff sold the Jeep for less money than the Jeep was actually worth.

## II. MCL 450.4515

Next, plaintiff argues that the trial court erred when it did not award damages to him despite the fact that Samuel substantially interfered with his interests as a member of Jaust, LLC. We disagree.

Plaintiff brought the action pursuant to MCL 450.4515, which states, in relevant part:

(1) A member of a limited liability company may bring an action . . . to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member. If the member establishes grounds for relief, the circuit court *may* issue an order or grant relief as *it considers appropriate*, including, but not limited to, an order providing for any of the following:

(a) The dissolution and liquidation of the assets and business of the limited liability company.

* * *

(c) The direction, alteration, or prohibition of an act of the limited liability company or its members or managers.

* * *

(e) An award of damages to the limited liability company or to the member.

(2) As used in this section, "willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member. [Emphasis added.]

-7-

Where a plaintiff argues on appeal that sufficient proof was provided at trial to support a different award, this essentially "is a credibility argument, and we defer to the trial court's superior position to observe and evaluate witness credibility." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). This Court will not "set aside a nonjury award merely on the basis of a difference of opinion." *Id.* (citation omitted).

The trial court recognized that Samuel had made the decision to exclude plaintiff from the business. Supporting this premise, the trial court heard evidence that Samuel changed the locks, prevented his access to financial and social media accounts, altered the articles of organization to give her management control, and unilaterally decided to close the store. Additionally, the testimony demonstrated that Samuel, to some extent, was attempting to open the same type of business, under a similar name, and in potentially the same location.

Based on the testimony, the trial court ordered the dissolution and liquidation of the assets of Jaust, LLC. The trial court also directed Jaust, LLC, to make a distribution to plaintiff in the amount of $23,058, which represented the 49% share owed to him to compensate for Samuel's distribution of $24,000. Therefore, the record reflects that the trial court granted relief pursuant to MCL 450.4515(a) and (c). Plaintiff essentially argues that, pursuant to MCL 450.4515(1)(e), he was *entitled* to additional damages based on Samuel's interference with his business interest. However, as the statute clearly states, "the circuit court *may . . .* grant relief to a member" that it considers appropriate in the matter; noticeably absent is the word "shall."[4] See MCL 450.4515(1). The trial court clearly found that granting additional damages was not appropriate, as it had two opportunities to make such an award—first, during the original trial, and second, during the hearing regarding plaintiff's motion for a new trial or amended judgment, where it explicitly decided against doing so.

Supporting the trial court's decision, evidence was provided at trial that both parties had used the business as their "piggy bank" for personal gains, and, as the trial judge stated, "I find both of your testimon[ies] inherently incredible, to be perfectly honest." Further, the trial court stated midtrial, "So far I haven't had any credible evidence as to what [plaintiff's] damages are." See *Marshall Lasser, PC*, 252 Mich App at 110. Therefore, the trial court did not err when it refused to assess additional damages against defendants.

## III. UNACCOUNTED FUNDS

Lastly, plaintiff argues that the trial court erred when it did not consider the $8,769 in unaccounted for cash receipts as a disbursement to Samuel, and thus, it erred by not awarding him his pro rata share of that disbursement. We disagree.

Plaintiff, at some point after regaining access to the business's point of sale system, concluded that Samuel did not deposit any cash into the business's account between June 24,

---

[4] In general, our courts have said that the term "may" is "permissive," as opposed to the term "shall," which is considered "mandatory." *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008).

2016, and September 29, 2016; further, he quantified the unaccounted-for cash to equal $8,769. However, there is no additional testimony regarding the alleged unaccounted-for cash besides plaintiff's self-serving testimony. In fact, even if that amount of cash sales was received, there was no additional testimony from any other witness that Samuel distributed those funds to herself, or in the alternative, whether she may have used the funds for business expenses. Therefore, plaintiff's computation of alleged damages on this issue is speculative, at best. See *Marshall Lasser, PC*, 252 Mich App at 110 (stating that damages should not be awarded where they are "too speculative to satisfy the award" being sought.). Also, as stated above, the trial court found plaintiff "inherently incredible," and we should not interfere with the trial court's determination on credibility. See *id.* Additionally, the trial court noted that it considered all of the "other stuff" when it made its decision. Accordingly, the trial court did not clearly err in this regard. The defendants having prevailed in full, may tax costs.

Affirmed.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel