# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KILDARE, Minors.

UNPUBLISHED
April 28, 2015

Nos. 323418; 323419; 323420
Berrien Circuit Court
Family Division
LC Nos. 2014-000016-NA;
    2012-000116-NA;
    2012-000116-NA

Before: BORRELLO, P.J., and KRAUSE and RIORDAN, JJ.

PER CURIAM.

In docket no. 323418, respondent mother and respondent father appeal as of right the trial court order terminating their parental rights to the minor children EK2 and IK3, born in 2011 and 2013 respectively, under MCL 712A.19b(3)(g) (failure to provide proper care and custody). In docket no. 323419, respondent father appeals as of right the trial court order terminating his parental rights to the minor children IK1, AK, EK1, and IK2, born in 2003, 2005, 2007, and 2009 respectively, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g), and (j) (reasonable likelihood of harm if children returned to parent). In docket no. 323420, respondent mother appeals as of right the trial court order terminating her parental rights to the minor children IK1, AK, EK1, and IK2 under MCL 712A.19b(3)(g) and (j). We affirm in all dockets.

## I. FACTUAL BACKGROUND

In 2008, Child Protective Services (CPS) received a complaint that respondent mother was not mentally capable of providing care to EK2 and IK3. The children were removed from respondent mother's care and placed with respondent father. However, for reasons that are not apparent from the record, the children were later removed from respondent father's care.

Respondent mother submitted to a psychological evaluation with Dr. Paul Kitchen (an expert in child custody and parenting time) and scored a 58, which is considered to be in the "mentally deficient range." Dr. Kitchen also noted that when a child had an average IQ, he or she was likely to manipulate a parent with a lower IQ. Respondent father, who was blind, also struggled with anger issues and poor parenting skills.

In 2012, a petition was filed regarding the parties' four other children—IK1, AK, EK1, and IK2. The Department of Human Services (DHS) received a complaint that AK had been

wearing the same dirty clothes to school for three consecutive days. When no one arrived to pick AK and IK1 up from the bus stop they began biting, pinching, hitting, and scratching bus staff. The police were contacted and respondent father indicated he believed the behavior was justified and "appropriate." DHS received a report that the children were without proper supervision and "completely out of control." Petitioner requested that IK1, AK, EK1 and IK2 be removed from respondent father's care.

As these lengthy proceedings progressed in the lower court, it became apparent that neither respondent was benefitting from services. In fact, respondents seemed to be regressing, as evidenced in an incident where respondent father physically assaulted AK during parenting time. Respondent father was subsequently convicted of domestic abuse. Moreover, DHS observed that EK2 had a hematoma on his head and IK3 had a black eye. It could not be determined when these injuries occurred.[1]

Ultimately, the trial court found that termination of respondents' parental rights to IK1, AK, EK1, and IK2 was proper pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).[2] The court also found that termination of respondents' rights to EK2 and IK3 was proper pursuant to MCL 712A.19b(3)(g). The court found that termination was in all of the children's best interests. Both respondents now appeal.

## II. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id.* "A decision is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re B & J*, 279 Mich App 12, 17-18; 756 NW2d 234 (2008) (quotation marks and citation omitted).

## B. GROUNDS

MCL 712A.19b(3)(g) provides for termination when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." A parent's failure to benefit from a service plan "is evidence that the parent will not be able to provide . . . proper care and custody." *In re White*, 710, 710; 846 NW2d 61 (2014).

## C. DOCKET NO. 323418 (EK2 AND IK3)

---

[1] Respondent mother became pregnant again in early 2014.

[2] MCL 712A.19b(c)(*i*) applied only to respondent father.

Respondents failed to provide proper care or custody of EK2 and IK3. Both respondents failed to benefit from services offered to them in a 19-month proceeding that involved the four older children, and they both lacked appropriate parenting skills at the time of termination in this matter.[3] See *In re White*, 303 Mich App at 710.

However, respondents argue on appeal that the trial court improperly terminated their parental rights to EK2 and IK3 where no evidence of abuse or neglect regarding EK2 and IK3 was presented. During a January 2014 parenting time session, respondent father physically assaulted AK. Respondent was arrested and convicted of domestic assault. "[H]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (quotation marks and citation omitted). Further, respondent mother failed to protect AK from respondent father, and this evidence is certainly probative of how she would treat the other children if they were in a situation where they were being physically abused. See *id.*

Moreover, during this altercation, respondent mother was behaving in a volatile manner and attempted to push past a security guard while she was holding EK2, causing the security guard to be concerned for EK2's welfare. Further, when EK2 and IK3 entered care on January 30, 2014, they had injuries for which respondent mother did not provide an explanation. She was banned from the DHS building for a period of time after she acted inappropriately, angrily, and aggressively on February 6, 2014, during parenting time.

Nor does the record support that respondents would have been "able to provide proper care and custody within a reasonable time considering" EK2 and IK3's ages. See MCL 712A.19b(3)(g). Given that respondents participated in a multitude of services during the 19-month proceeding and still they failed to demonstrate a benefit from any of them, there is no indication that they would be able to provide proper care and custody within a reasonable time. At the time of termination, EK2 was three years old and IK3 was 16 months old. They required permanency. The trial court's findings in docket no. 323418 that termination of respondents' parental rights was proper pursuant to MCL 712A.19b(3)(g) does not leave us with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

### D. DOCKET NO. 323419 & 323420 (IK1, AK, EK1, AND IK2)

The trial court properly terminated respondent's rights to IK1, AK, EK1, and IK2 pursuant to MCL 712.19b(3)(g). Respondent father was unable to provide proper care or custody to IK1, AK, EK1, and IK2 when the proceeding began in November 2012 because he

---

[3] Respondent mother argues that the July 9, 2014 parenting time she had with the children demonstrated that she had benefitted from services. But, evidence regarding the July 9, 2014 parenting time was not presented at the March 4, 2014 termination hearing regarding EK2 and IK3 and was therefore not before the trial court when it rendered its ruling. Moreover, the caseworker testified that respondent mother's July 2014 parenting time did not demonstrate that she had benefitted given that she failed to meaningfully interact with the children.

lacked suitable housing and lacked proper parenting skills. During the proceedings, respondent father was provided with counseling and multiple services directed toward improving his parenting skills. Yet, he continued to behave in a threatening manner at times with the children and with DHS staff members. Even though he showed some progress in parenting, he often would revert back to improper behavior.

In fact, respondent father and AK got into a physical altercation during a parenting time session, for which respondent father was convicted of domestic assault. Because of this assaultive behavior, his parenting time was suspended. At the termination hearing, respondent father called the incident a "mistake" and typical of frustration that everyone experiences at some point. Despite participating in anger management services at the time of the hearing, he did not believe he had anger issues. The caseworker did not believe that he gained any benefit from the services he was required to complete.

Respondent mother also was unable to provide proper care or custody to IK1, AK, EK1, and IK2. During a psychological evaluation, Dr. Kitchen said that respondent mother's IQ would affect her ability to parent. He also believed that she had never possessed appropriate parenting skills despite the fact she was provided services in a 2008 child protective proceeding. Between April and July 2013, she failed to demonstrate that she could independently parent the children, and failed to stand up to respondent father when he inappropriately raised his voice during a parenting time. From August 2013 through January 2014, respondent mother worked with a parenting coach, but failed to show any long term improvement. She consistently allowed respondent father to "take the lead," and never tried to stop him when he was being inappropriate in the children's presence. She also continued her relationship with respondent father despite warnings from DHS that the children would not be returned to her if she continued the relationship.

Respondent mother also failed to protect AK in January 2014, and this evidence is probative of how she would treat the other children if they were in her care. *In re LaFrance Minors*, 306 Mich App at 730 ("[H]ow a parent treats one child is certainly probative of how that parent may treat other children."). Contrary to respondent mother's arguments on appeal, the record does not support that she tried to protect AK from respondent father's abuse on January 30, 2014, given that she brought AK to respondent father after the minor had disobeyed him. She also tried to keep the caseworker from intervening and indicated that respondent father was permitted to discipline his child.

Further, in February 2014, respondent mother was inappropriate, angry, and aggressive during a parenting time and was escorted out of the DHS building and told that she could not return. Her parenting time was later suspended for all of the children. As of February 2014, the parenting coach did not believe that respondent mother was able to independently care for the children or meet their emotional needs. In the months leading up to termination, respondent mother completed parenting skills training. However, she continued to lack insight and knowledge about parenting, and her performance in the parenting class did not reflect that she had participated in parenting training in the past. On July 9, 2014, respondent mother had a one-hour parenting time with all of the children. She only was able to care for their basic needs and did not interact with them in a meaningful manner. Although respondent mother completed

services during the proceeding, the record does not support that she benefitted. *In re White*, 303 Mich App at 710.

There also is no evidence to support that respondents would be able to provide proper care and custody within a reasonable time given that they failed to benefit from any of the services offered to them over the course of the 19-month proceeding. At the time of termination, IK1 was ten years old, AK was nine years old, EK1 was eight years old, and IK2 was almost five years old. They had been in care for 19 months, and they all had either emotional or cognitive issues and the children needed consistency and permanency.

The trial court's findings in docket nos. 323419 and 323420 that termination of respondents' parental rights was proper pursuant to MCL 712A.19b(3)(g) does not leave us with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App at 459.

Because we have concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision in docket nos. 323419 and 323420. *Id.* at 461.

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondents next challenge the trial court's best-interests finding regarding IK3 and EK2.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "We review for clear error . . . the court's decision regarding the child's best interest under MCL 712A.19b(5)." *Id.* (quotation marks and citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* at 41 (quotation marks, citation, and brackets omitted).

### B. ANALYSIS

Respondents first argue that the best-interests finding was deficient because the trial court failed to consider the factors outlined in *In re Olive/Metts Minors*. In *In re Olive/Metts Minors*, 297 Mich App at 41-42, we held that "[i]n deciding whether termination is in the child's best interests, the court *may* consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." (Emphasis added; internal citations omitted). However, because the use of the word "may" reflects permissive action, *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008), the trial court was not obligated to address every suggested factor. Furthermore, the record supports that the trial court expressly considered EK2 and IK3's need for permanency and stability and respondents' lack of parenting skills.

Nevertheless, respondents argue that the trial court clearly erred because it failed to consider the individual interests of EK2 and IK3 when deciding best interests. In *In re Olive/Metts*, 297 Mich App at 42, this Court held that "the trial court has a duty to decide the best interests of each child individually." However, in *In re White*, 303 Mich App at 715-716, this Court held that "this Court's decision in *In re Olive/Metts* stands for the proposition that, if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." (Emphasis in original). This Court further held that a trial court does not clearly err if it "fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id.* Here, the record establishes that the only significant difference between EK2 and IK3 at the time of termination was their ages and the fact that EK2 had behavioral issues and IK3 did not. The trial court addressed these differences when rendering its ruling.

Respondents next argue that it was improper for the trial court to consider their performance in services in the proceeding involving IK1, AK, EK1, and IK2 when deciding whether termination was in EK2 and IK3's best interests. Because respondents failed to explain or rationalize this argument or cite supporting authority, it is abandoned. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Further, existing authority does not support that this was erroneous.

Finally, respondents argue that the trial court made insufficient findings to support its determination that termination of their parental rights to IK3 and EK2 was in their best interests. However, the record establishes that the trial court made detailed findings of fact with respect to IK3 and EK2's best interests, and we find that they were sufficient to satisfy MCR 3.977(I)(1).

## IV. CONCLUSION

The trial court properly found the statutory grounds for termination and that termination was in the minor children's best interests. We affirm.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

-6-