*In re* MILLER ESTATE

Docket No. 149779. Submitted March 8, 1994, at Detroit. Decided September 19, 1994, at 9:40 A.M.

Madalyn Watkins petitioned the Wayne County Probate Court for an order declaring her to be a daughter of Marvin Miller, who had died intestate and whose estate had been admitted to probate. The petitioner argued that a 1947 determination by the Wayne Circuit Court that the deceased was her father, a determination that had been based on the deceased's guilty plea to bastardy, was sufficient to establish the deceased's paternity of her for the purpose of intestate succession. Corliss P. Foster, personal representative of the estate, responded that paternity for the purpose of intestate succession could be established only by satisfying at least one of the three conditions set forth in MCL 700.111(4); MSA 27.5111(4) and that the petitioner satisfied none of those three conditions. The court, Frank Szymanski, J., determined that the petitioner was a daughter of the deceased for the purpose of intestate succession. Subsequently, the court, Freddie G. Burton, J., successor to Judge Szymanski, entered a new order determining heirs that did not include the petitioner. The petitioner appealed. The Court of Appeals, GRIFFIN, P.J., and REILLY and T. M. BURNS, JJ., in an unpublished opinion per curiam, decided May 2, 1991 (Docket No. 117188), reversed, holding that a new order determining heirs could not be entered unless the prior order was vacated first. Thereafter, Judge Burton vacated the prior order and entered an order determining heirs that did not include the petitioner. The petitioner appealed.

The Court of Appeals *held:*

The Michigan Supreme Court in *Easley v John Hancock Mutual Life Ins Co,* 403 Mich 521 (1978), held that a judicial determination of paternity entitled a child born out of wedlock to share equally in the father's estate notwithstanding the

REFERENCES

Am Jur 2d, Bastards §§ 150, 158, 159; Descent and Distribution § 62.

What amounts to recognition within statutes affecting the status or rights of illegitimates. 33 ALR2d 705.

child's failure to satisfy the conditions of the predecessor statute to MCL 700.111(4); MSA 27.5111(4). MCL 700.111(4); MSA 27.5111(4) was enacted as part of 1978 PA 642, the Revised Probate Code, and was not a legislative response to the *Easley* decision. The *Easley* decision was based on the constitutional right to equal protection of the laws, and its validity continued to be recognized after the adoption of the Revised Probate Code. Indeed, the Legislature codified the *Easley* decision in its 1993 amendment of the Revised Probate Code by 1993 PA 206, § 111(4)(d), MCL 700.111(4)(d); MSA 27.5111(4)(d). Accordingly, the probate court erred in vacating the prior order that determined the petitioner to be the daughter of the deceased for the purpose of intestate succession.

Reversed.

DESCENT AND DISTRIBUTION — INTESTATE SUCCESSION — CHILDREN
    BORN OUT OF WEDLOCK — ORDERS OF FILIATION.
    A person who was born out of wedlock but for whom there has
    been a judicial determination that the person was the child of a
    man is entitled to share in the estate of that man as his child if
    he dies intestate (MCL 700.111[4]; MSA 27.5111[4]).

*Douglas D. Elliard,* for the petitioner.

*Gabel, Gudmundsen & Gabel, P.C.* (by *Clarence M. Gabel* and *Laura Gabel*), for the respondent.

Before: WHITE, P.J., and MICHAEL J. KELLY and W. J. CAPRATHE,* JJ.

WHITE, P.J. Petitioner appeals as of right a February 14, 1992, probate court order vacating a prior order, issued October 9, 1985, by a predecessor judge, which determined that petitioner Madalyn Harris Watkins was a daughter of decedent Marvin Miller. We reverse.

I

At issue is whether the three methods of establishing a man to be the natural father of a child for purposes of intestate succession set forth in

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

MCL 700.111(4); MSA 27.5111(4),[1] are exclusive, precluding inheritance under the facts of this case.

Petitioner was born on June 4, 1947, to Bertha Harris. A birth certificate was completed on that date and filed shortly thereafter, which listed Marvin Miller as the father. On July 3, 1947, following Harris' paternity complaint, Miller pleaded guilty in Detroit Recorder's Court to "bastardy." Relying on that plea, the Wayne Circuit Court adjudged Miller to be petitioner's father and ordered child support payments until petitioner reached sixteen years of age. Apparently, Miller complied. According to Harris' testimony at a 1985 probate court hearing, Miller, who had lived with Harris from 1945 to 1947, recognized petitioner as his daughter. Watkins testified that she had not met Miller until five or six years before his death, but thereafter he visited her home quite often, perhaps once or twice a week. Respondent does not dispute that petitioner is Miller's child or that Miller acknowledged her as his child.

At the time of the lower court proceedings, MCL 700.111(4); MSA 27.5111(4) provided:

> If a child is born out of wedlock or if a child is born or conceived during a marriage but not the issue of that marriage, a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs:
>
> (a) The man joins with the mother of the child and acknowledges that child as his child in a writing executed and acknowledged by them in the same manner provided by law for the execution and acknowledgment of deeds of real estate and recorded at any time during the child's lifetime in the office of the judge of probate in the county in which the man or mother of the child reside at the time of execution and acknowledgment. It shall

---

[1] Before its amendment by 1993 PA 206 in October 1993.

not be necessary for the mother of the child to join the acknowledgment if she is disqualified to act by reason of mental incapacity, death, or any other reason satisfactory to the probate judge of the county in which the acknowledgment may be recorded.

(b) The man joins with the mother in a written request for a correction of certificate of birth pertaining to the child which results in issuance of a substituted certificate recording the birth of the child.

(c) The man and the child have borne a mutually acknowledged relationship of parent and child which began before the child became 18 and continued until terminated by the death of either.

Petitioner does not claim that the facts as recited satisfy any of these conditions.

Petitioner relies on *Easley v John Hancock Mutual Life Ins Co,* 403 Mich 521; 271 NW2d 513 (1978). In *Easley,* the Michigan Supreme Court, relying on *Trimble v Gordon,* 430 US 762; 97 S Ct 1459; 52 L Ed 2d 31 (1977), held that a judicial determination of paternity entitled a child born out of wedlock to share equally in his father's estate notwithstanding the child's failure to satisfy the conditions of MCL 702.83; MSA 27.3178(153) of the former Probate Code.[2] *Easley, supra* at 522,

---

[2] The statute, as amended by 1972 PA 235, read in pertinent part:

Upon the intermarriage of the parents of a child born out of wedlock, or, in the absence of such writing under their hands, acknowledging it as their child, in either instance such child shall be legitimate with the identical status, rights and duties of a child born in lawful wedlock, effective from its birth. It shall not be necessary for the mother of such child to join in such acknowledgement in case she is disqualified to act by reason of insanity, mental incapacity, death, or if for any other reason satisfactory to the probate judge of such county, it is not practical for her to join therein. The failure of the mother of such child to join in any acknowledgement otherwise filed in accordance with the provisions of this section shall not invalidate or otherwise affect the same in any manner. Such ac-

524-526.[3] In *Trimble,* as in *Easley* and here, pater-
nity and support orders had been entered by a
circuit court. The father paid child support in
compliance with the order, openly acknowledging
the child as his. Under the Illinois statute in
issue,[4] however, Trimble could inherit from her
father only if her parents had intermarried and
her father acknowledged her. Trimble challenged
the statute's constitutionality on equal protection
grounds.

The Supreme Court declined to apply strict scru-
tiny to the statute's classification based on illegiti-
macy. 430 US 767. Even so, it held that the statute
violated the Equal Protection Clause of the Four-
teenth Amendment because the state's interest in
promoting legitimate family relationships did not
justify imposing sanctions on the children of ille-
gitimate relationships, 430 US 768-770, and also
because the "[d]ifficulties of proving paternity in
some situations do not justify the total statutory
disinheritance of illegitimate children whose fa-
thers die intestate." 430 US 772. The Court went
on to state:

> The facts of this case graphically illustrate the

knowledgement shall be executed and acknowledged in the
same manner by law provided for the execution and acknowl-
edgement of deeds of real estate, and be recorded at any time
in the office of the judge of probate of the county in which such
father or mother of such child resided at the time of the
execution and acknowledgement. Nothing in this section or
done pursuant hereto except intermarriage shall give any
person or persons any rights, standing or preference in any
controversy relating to proceedings pursuant to chapter 10.

[3] Both the successor probate court and respondent have approached
*Easley,* which specifically dealt with an insurance policy, as if that
case did not address intestate succession. However, as the cited pages
of that opinion clearly indicate, the Court did address the issue of
sharing in an intestate father's estate and predicated its holding on
*Trimble,* which addressed only that issue.

[4] Ill Rev Stat ch 3, § 12 (1973), later repealed. *Trimble, supra* at 763,
n 1.

constitutional defect of [the statute]. Sherman Gordon was found to be the father of Deta Mona [Trimble] in a state-court paternity action prior to his death. On the strength of that finding, he was ordered to contribute to the support of his child. *That adjudication should be equally sufficient to establish Deta Mona's right to claim a child's share of Gordon's estate, for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing her to claim in these circumstances.* [*Id.*; emphasis added.]

The Michigan statute in effect at the time of *Easley, supra,* MCL 702.83; MSA 27.3178(153) (see n 2), was not as restrictive as the Illinois statute under review in *Trimble,* because it permitted a child born out of wedlock to inherit from the father either on intermarriage of the parents or by the parents acknowledging the child as theirs "by writing under their hands." Nonetheless, the *Easley* Court recognized that an equal protection issue was at stake in determining whether a judgment of paternity, sufficient to establish a right to support payments, was not also "sufficient to establish [the child's] right to claim a child's share of [the father's] estate." *Trimble, supra; Easley* at 524-525. The *Easley* Court concluded that a judgment of paternity granted no less than the right to an equal share with other children in the father's estate and that to decide otherwise would leave children whose filiation had been judicially decreed "in an inferior position," violating their right to equal protection of the laws. *Id.* at 524.

*Easley* was decided on November 20, 1978. That same year, the Legislature undertook to revise the Probate Code. Title of 1978 PA 642. The Revised Probate Code was approved on January 11, 1979, and became effective on July 1, 1979. Under that act, MCL 702.83; MSA 27.3178(153) and related

statutes were repealed and replaced by MCL
700.111; MSA 27.5111 as amended.[5] Respondent
argues that the Legislature's passage of MCL
700.111; MSA 27.5111 after *Easley* renders a judi-
cial determination of paternity irrelevant to intes-
tate succession, because the conditions set forth in
the statute are exclusive. We disagree.

We do not understand the Legislature's passage
of MCL 700.111; MSA 27.5111 to be responsive to
*Easley* or to mitigate its holding in any way. While
the provisions of MCL 700.111; MSA 27.5111 ad-
dress to some extent the issues decided in *Trimble*
and *Easley*, the equal protection issue that arises
when a judicial determination of paternity is not
accorded its full weight remains. We conclude that
MCL 700.111(4); MSA 27.5111(4), before its recent
amendment,[6] addressed extrajudicial methods of
establishing filiation and did not purport to ad-
dress the effect of judicial determinations of pater-
nity on rights of intestate succession. Although
respondent finds in *In re Vellenga Estate,* 120
Mich App 699; 327 NW2d 340 (1982), support for
her argument that the provisions of MCL
700.111(4); MSA 27.5111(4) are exclusive, that case
did not involve a judicial determination of pater-
nity and did not discuss *Easley.* Moreover, in
*Vellenga,* the first judicial determination of the

---

[5] 1979 PA 51 amended the title and numerous sections of the
Revised Probate Code. It was approved on July 7, 1979, and took
immediate effect, retroactive to July 1, 1979.

[6] The Legislature recently amended MCL 700.111; MSA 27.5111 and
MCL 700.127; MSA 27.5127 to codify *Easley's* holding and to address
the inheritance rights of children conceived as the result of rape. 1993
PA 206, approved October 18, 1993, filed October 19, 1993, and
ordered to take immediate effect. MCL 700.111(4)(d); MSA 27.5111(4)
(d) was added and provides:

The man has been determined to be the father of the child
and an order of filiation establishing that paternity has been
entered pursuant to the paternity act, Act No. 205 of the Public
Acts of 1956, being sections 722.711 to 722.730 of the Michigan
Compiled Laws.

relationship between the child and her putative father took place after the father had died.

This Court has continued to recognize that, even after the enactment of MCL 700.111; MSA 27.5111, under *Easley,* "an illegitimate child can inherit from his intestate father if, in a paternity suit, it is determined that the intestate is his father." *In re Blanco Estate,* 117 Mich App 281, 290; 323 NW2d 671 (1982).[7]

Our conclusion that *Easley* established a nonstatutory, judicial method of establishing a right to inherit that continued after the enactment of MCL 700.111(4); MSA 27.5111(4) is supported by the legislative analyses of the 1993 amendments (see n 6), which treat *Easley* as establishing an additional, non-statutory route to inheritance and refer to paternity actions as a means already recognized. The Senate Fiscal Agency analysis states:

> The Code now specifies that out-of-wedlock children may inherit from their biological father in any of three situations (in addition, of course, to when the man provides for them in his will): . . . *Case law has established another route of inheritance for a child born out of wedlock. When an action under the Paternity Act has led to a man's being determined to be the father of a child, according to* Easley v John Hancock Insurance Co. *(403 Mich 521 (1978), the child is entitled to equitable treatment with other children with respect to inheritance.* Some people believe that inheritance rights of children born out of wedlock, including those conceived as a result of rape, should be outlined in the Code and that the *Easley* decision should be codified in statute.
>
> \* \* \*
>
> Supporting Argument

---

[7] In *Blanco,* the Court declined to give effect to an adjudication of paternity entered in a Puerto Rican court because the proceeding took place more than four years after the alleged father's death.

> . . . *In addition, the bill would solidify the practice, established in* Easley, *of granting inheritance equity to children born out of wedlock when paternity had been established and an order of filiation had been issued.*
>
> Opposing Argument
>
> The bill could make virtually all estates vulnerable to the possibility of fraudulent claims from would-be heirs claiming to be illegitimate children. If these claims could not be substantiated *by means currently recognized in law*—written acknowledgement, *paternity determination,* birth certificate revision—then, taken to extremes, the bill could raise the prospect of regular exhumations and DNA testing to prove paternity posthumously. . . . [*Senate Fiscal Agency Analysis,* HB 4561, October 6, 1993. Emphasis added.]

A similar analysis is found in the *House Legislative Analysis,* HB 4561, June 15, 1993. Thus, we conclude that *Easley* is applicable to the instant case and reverse.

In view of our decision on this issue, we need not address petitioner's claim that the probate court lacked authority to vacate the prior order of the predecessor judge.

Reversed.