# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of KENNETH JAMES KOEHLER.

---

SHERRY BIERKLE, Personal Representative of
the Estate of KENNETH JAMES KOEHLER,

      Appellant,

v

ERNEST LEE UMBLE,

      Appellee.

FOR PUBLICATION
March 24, 2016
9:00 a.m.

No.   322996
Oakland Probate Court
LC No.   2012-341834-DE

---

*In re* Estate of KENNETH JAMES KOEHLER.

---

SHERRY BIERKLE, Personal Representative of
the Estate of KENNETH JAMES KOEHLER,

      Appellant,

and

JOSEPH YORK, EDMUND YORK, RONALD
MCKEEL, DANIEL MCKEEL, GREGORY
MCKEEL, MICHAEL SIES, NANCY
SCHREIBER, and TERRI CARTER,

      Interested Persons,

v

ERNEST LEE UMBLE,

      Appellee.

No.   322997
Oakland Probate Court
LC No.   2012-341834-DE

---

Before:  SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

-1-

GLEICHER, J.

The law of intestate succession flows from parent-child relationships. What happens when an unmarried father dies before his child is born, and no evidence exists that he would have willingly supported his child or openly acknowledged the child as his own? Does nature or nurture establish the familial link for inheritance purposes? We confront these questions here.

Our story begins in Colorado in 1931, with a fatal affray over a woman's affections. Soon after, the woman delivered a child. That child (who grew into a man and had a child of his own) is the linchpin to establishing the paternal line in this inheritance dispute.

The probate court determined that the murdered Coloradan, Carl Cedric Umble, was the grandfather of the intestate deceased in this case, Kenneth Koehler. Kenneth Koehler's maternal relatives contend that Carl Cedric Umble's sudden and inopportune exit from this earth triggered MCL 700.2114(4), which severs the intestate inheritance rights of parents who have refused to financially support and openly acknowledge a child. In other words, MCL 700.2114(4) punishes parents who desert and ignore their progeny by denying them the right to inherit from their dead child's estate. According to the maternal relatives, Carl Cedric Umble was such a parent.

The probate court rejected this argument, finding that applying MCL 700.2114(4) in this situation would render "meaningless" other sections of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, that afford inheritance rights to posthumously-born children. Further, the court declared, the maternal relatives had not met their summary disposition burden, as they presented no evidence that Carl Cedric Umble had rejected his in utero child. We agree with the probate court, and affirm.

I

The deceased, Kenneth Koehler, left no will. He had no spouse, no children, and no siblings. His parents predeceased him, as did his grandparents. Under the EPIC, half of Kenneth's intestate estate passes to the descendants of his paternal grandparents, and half to his maternal relatives. MCL 700.2103(d).

Kenneth Koehler's paternal pedigree is the focal point of this case. We begin with the details gleaned largely from various public and historical records.

Kenneth's father was a man named Carl Koehler. Carl Koehler was raised by a single mother, Florence Koehler. Florence never married Carl Koehler's father, Carl Cedric Umble. The tragic and somewhat lurid (even by today's standards) story of Florence Koehler and Carl Cedric Umble has been pieced together through old Colorado newspaper articles and legal documents.

It appears that Carl Cedric Umble led a short but passionate life punctuated by the conception of two illegitimate children (Carl Koehler and Ernest Umble), a vicious street fight over a woman (Florence Koehler), and death by stabbing at age 20, three months before Carl Koehler's 1931 birth. The first of Carl Cedric Umble's love children was Ernest Umble, who was conceived during Carl Cedric Umble's youthful liaison with Lyndall Adeline Hackett. Carl

Cedric and Lyndall Adeline married a year after Ernest's 1929 birth, rendering Ernest a marital child under current Colorado law. See CRSA § 19-4-105(1)(c).

Carl Cedric Umble and Lydia Hackett Umble then separated, and he began courting Florence Koehler. According to a newspaper account, Florence and Carl Cedric Umble quarreled. Although he "failed to revive the girl's affection for him," Carl Cedric reportedly "threatened violence" to anyone who dated Florence. One Clyde Shadwick ignored this warning. When he attempted to kiss Florence, he was "knocked down by a blow of Umble's fist." Shadwick then stabbed Carl Cedric Umble, allegedly in self-defense.

Carl Cedric Umble's second son, Carl Koehler, was born three months later. In probate parlance, Carl Koehler was a "posthumous child." A posthumous child is "a child born after a parent's death." *Black's Law Dictionary* (10th ed), p 291.[1]

Florence never had any other children. When she died in 1946, Carl was only 15 years old. Four years later, Carl married Anna York. The marriage produced Kenneth Koehler, and no other children. Carl died when Kenneth was eight years old. Kenneth died at the age of 59, and left no will distributing his $500,000 estate. For those readers who find themselves lost in Kenneth's patrilineal tree, we include this visual aid:



---

[1] The dissent uses the term "afterborn child." Technically, the terms "posthumous child" and "afterborn child" have different meanings. *Black's Law Dictionary* (10th ed), p 290, defines an "afterborn child" as "[a] child born after execution of a will or after the time in which a class gift closes." Historically, Michigan caselaw used the term "afterborn child" in that manner. See, e.g., *Hankey v French*, 281 Mich 454; 275 NW 206 (1937). The EPIC uses the term "[a]fterborn heirs" to refer to children "in gestation at a particular time," which encompasses both common-law concepts. MCL 700.2108.

Sherry Bierkle is Kenneth's first cousin on his mother's side. She successfully petitioned the probate court to be named the personal representative of Kenneth's estate. Approximately 17 months later, Bierkle filed a final accounting and a proposed settlement distributing the estate among Kenneth's maternal relatives. Ernest Umble intervened. Ernest contended that as Kenneth's uncle and sole surviving paternal relative, half of Kenneth's estate belonged to him. The maternal relatives challenged Ernest's claim of kinship, focusing on the paternity of Carl Koehler, Kenneth's father.

Ernest asserted that Kenneth's grandfather was his own father, Carl Cedric Umble. Bierkle took issue with Ernest Umble's claim and filed a motion for summary disposition under MCR 2.116(C)(8). She insisted that Ernest was barred from inheriting by MCL 700.2114(4), which precludes inheritance by and through a parent who fails to "openly treat[] the child as his or hers," and "has . . . refused to support the child."

The probate court conducted an evidentiary hearing. Assembling the biological strands of Kenneth Koehler's paternal line presented a challenge worthy of an expert archivist. Ernest presented Carl Koehler's Colorado birth certificate and a Denver, Colorado newspaper article describing the circumstances of Carl Cedric Umble's demise. The parties also submitted various marriage, birth, and death certificates for the involved individuals.

The probate court determined that Carl Koehler's father was Carl Cedric Umble. This finding means that Ernest Umble and Carl Koehler were half-brothers, and that Ernest Umble was the uncle of our deceased, Kenneth Koehler. As Ernest Umble was the only surviving relative on Kenneth's paternal side, the court ruled that he would take half of the estate. The probate court rejected Bierkle's assertion that MCL 700.2114(4) barred Ernest's claim. The court also rebuffed Bierkle's legal argument that Carl Koehler's paternity was not properly established under Michigan law.

Bierkle appeals.

II

Bierkle asserts that the probate court clearly erred when it found that Carl Cedric Umble was the natural father of Carl Koehler. We review the probate court's factual findings for clear error. *In re Townsend Conservatorship,* 293 Mich App 182, 186; 809 NW2d 424 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id.* We consider issues of statutory interpretation de novo. *Id.*

Whether Carl Cedric Umble was Carl Koehler's father for purposes of the EPIC is important, because establishing a parent-child relationship is the first step in determining whether Ernest Umble can inherit as a paternal descendant. If Carl Cedric Umble was entitled to inherit from his child, Carl Koehler, Ernest Umble inherits as the only surviving descendant of Koehler's paternal grandparents. Otherwise, Bierkle and the other maternal descendants inherit Kenneth's entire estate.

Article II, part 1 of the EPIC governs rights to intestate inheritance. *In re Certified Question*, 493 Mich 70, 76-77; 825 NW2d 566 (2012). The EPIC helpfully supplies the basic definitions needed to understand its pertinent provisions. The term "descendant" is used "in relation to an individual," and includes "all of his or her descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in this act." MCL 700.1103(k). The EPIC defines a "parent" as "an individual entitled to take, or who would have been entitled to take, as a parent under this act by intestate succession from a child who dies without a will and whose relationship is in question." MCL 700.1106(*i*).

If a decedent dies intestate and has no surviving spouse, the EPIC provides the order in which the decedent's estate passes to his or her surviving relatives. MCL 700.2103. First, the estate passes to the decedent's descendants. MCL 700.2103(a). If the decedent has no descendants, the estate passes to the decedent's surviving parent or parents. MCL 700.2103(b). If the decedent has neither descendants nor surviving parents, the estate passes to the descendants of the decedent's parents (the decedent's siblings, nieces, and nephews). MCL 700.2103(c).

If the decedent has no surviving descendants, parents, or descendants of parents, the EPIC instructs the probate court to determine whether there are any descendants of the decedent's grandparents. MCL 700.2103(d). Half the decedent's estate passes to the decedent's paternal grandparents or their descendants, and the other half passes to the decedent's maternal grandparents or their descendants. MCL 700.2103(d). Finally, "[i]f there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent's relatives on the other side in the same manner as the 1/2." MCL 700.2103(d).

Accordingly, if Carl Cedric Umble was entitled to inherit as Carl Koehler's parent, Ernest Umble is entitled to inherit half of Koehler's estate because he is the sole surviving descendant of Koehler's paternal grandparents. But if inheritance could not pass up to Carl Cedric Umble through his relationship with Carl Koehler, it cannot pass back down to Ernest Umble, and he is not entitled to a portion of the estate.

Resolution of this case would be easy if we could simply stop here by concluding that Ernest Umble is a paternal descendant entitled to inherit under MCL 700.2103(d), which provides that half of Kenneth's intestate estate passes to the descendants of his paternal grandparents. The evidence substantiates that Ernest is a descendant of Kenneth's paternal grandfather, Carl Cedric Umble. As such, Ernest inherits. Case closed. Alas, Carl Koehler's nonmarital, posthumous birth complicates this case.

III

The EPIC provides that, generally, a child is the child of his or her natural parents even if they were not married:

Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. . . . [MCL 700.2114(1).]

And a child is a child of his or her natural father even if the father dies before the child's birth. See *Black's Law Dictionary*. Posthumous children enjoy a right to intestate inheritance in Michigan, if they were "in gestation" at the time of the father's death and lived for 120 hours or more after birth. MCL 700.2108. The parentage of a posthumous child can be established by the probate court. MCL 700.2114(1)(b)(*v*). We find no fault with the manner in which the probate court determined that Carl Koehler fulfilled the statutory requirements for intestate succession as an out-of-wedlock, posthumous child, particularly given what the court had to work with.

MCL 700.2114(1)(b) sets forth circumstances in which a man is considered to be the natural parent of a child when that child is conceived out of wedlock for purposes of the EPIC. In this case, the probate court proceeded under MCL 400.2114(b)(*v*), which provides:

[r]egardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act, . . . MCL 722.711 to 722.730.

Michigan's Paternity Act "was created as a procedural vehicle for determining the paternity of children born out of wedlock." *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009) (quotation marks and citations omitted). The Paternity Act provides four ways in which a court may establish paternity by an order of filiation:

(a) *The finding of the court or the verdict determines that the man is the father.*

(b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgement of paternity.

(c) The defendant is served with summons and a default judgment is entered against him or her.

(d) Genetic testing . . . determines that the man is the father. [MCL 722.717(1) (emphasis added).]

The party seeking to prove paternity must establish by a preponderance of the evidence that the man is the child's father. *Bowerman v MacDonald*, 431 Mich 1, 14; 427 NW2d 477 (1988).

Under MCL 722.717(1)(a), the probate court had the authority to review the totality of the evidence and to determine that Carl Cedric Umble was Carl Koehler's father. The court observed that Carl Cedric Umble was listed as the father on Carl Koehler's birth certificate. Moreover, the probate court specifically noted that Carl Cedric Umble was killed in a knife fight over Florence Koehler, Carl Koehler's mother; that a newspaper article and death certificate indicated that Carl Cedric Umble's mother was Grace Umble, and Carl Koehler's obituary listed his grandmother as Grace Roberts of Denver, Colorado, and that Carl Koehler's marriage certificate listed his father as "Carl Sedric Umble." Taken together, this evidence preponderates

in favor of Carl Umble and Carl Koehler's father-child relationship. Accordingly, we find this portion of the probate court's ruling well-supported, both factually and legally.

IV

According to Bierkle, MCL 700.2114(4) forecloses Ernest Umble's inheritance rights, even assuming that Carl Cedric Umble fathered Carl Koehler. As we have mentioned, the statute denies intestate inheritance to parents who fail to nurture a child in two critically important ways: by financially abandoning the child and by denying parenthood. See *In re Turpening Estate*, 258 Mich App 464; 671 NW2d 567 (2003). The dead child in this case was Carl Koehler, through whom Ernest Umble seeks to inherit as a paternal relative. Bierkle contends that Carl Cedric Umble neglected Carl Koehler in the manners described in subsection 2114(4).

Our analysis must begin with an overview of the statute as a whole, as we "do[] not construe the meaning of statutory terms in a vacuum." *Manual v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (quotation marks and citation omitted). MCL 700.2114 states in relevant part:

> (1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status. . . .
>
> * * *
>
> (2) An adopted individual is the child of his or her adoptive parent or parents and not of his or her natural parents, but adoption of a child by the spouse of either natural parent has no effect on either the relationship between the child and that natural parent or the right of the child or a descendant of the child to inherit from or through the other natural parent. An individual is considered to be adopted for purposes of this subsection when a court of competent jurisdiction enters an interlocutory decree of adoption that is not vacated or reversed.
>
> (3) The permanent termination of parental rights of a minor child by an order of a court of competent jurisdiction; by a release for purposes of adoption given by the parent, but not a guardian, to the family independence agency or a licensed child placement agency, or before a probate or juvenile court; or by any other process recognized by the law governing the parent-child status at the time of termination, excepting termination by emancipation or death, ends kinship between the parent whose rights are so terminated and the child for purposes of intestate succession by that parent from or through that child.
>
> (4) Inheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child.
>
> (5) Only the individual presumed to be the natural parent of a child under subsection (1)(a) may disprove a presumption that is relevant to that parent and child relationship, and this exclusive right to disprove the presumption terminates on the death of the presumed parent.

Subsection (1) sets forth the general rule that "an individual is the child of his or her natural parents, regardless of their marital status." Notably, subsection (1)(b)(*v*) allows a court to find a parent-child relationship "[r]egardless of . . . whether or not the alleged father has died." The Reporter for EPIC has noted, "It is important to read and understand that subsection (1) expresses the operative rule of this entire section." Martin & Harder, Estates & Protected Individuals Code With Reporter's Commentary (ICLE, 2015), p 65.[2] Subsection (1) dictates that a parent-child relationship existed between Carl Cedric Umble and Carl Koehler, despite that Carl Koehler was a posthumous, nonmarital child.

Subsections (2), (3), and (4) describe three situations in which a proven parent-child relationship can be overcome, defeating intestate inheritance despite a demonstrated parent and child relationship. Subsection (2) provides that an adopted child "is the child of his or her adoptive parents," and not of his or her natural parents. Subsection (3) states that "[t]he permanent termination of parental rights" severs the parent-child relationship for the purposes of intestate succession. And subsection (4) declares that "[i]nheritance from or through a child by either natural parent or his or her kindred is precluded unless that natural parent has openly treated the child as his or hers, and has not refused to support the child." These four subsections "are the exceptions to the operative rule." Martin & Harder, p 65.[3]

Because subsection (4) is an exception to the "operative rule" of intestate succession, it is akin to an affirmative defense. An affirmative defense "is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993), citing 2 Martin, Dean & Webster, Michigan Court Rules Practice, p 192. In the context of MCL 700.2114, once the parent-child relationship is proven in a manner consistent with subsection (1), the gateway to intestate inheritance is open; alternatively stated, the prima facie case for inheritance is established. An heir may challenge an individual's right to inherit based on a demonstrated parent-child relationship by invoking one of the exceptions. As with any affirmative defense, the party asserting that the exception controls the outcome bears the burden of presenting evidence to support his or her claim. See *Attorney Gen ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664-665; 741 NW2d 857 (2007). We agree with the probate court that Bierkle shirked this burden.

---

[2] The Reporter highlighted that subsection (1)(b)(*v*) "offers an additional avenue for establishing paternity when mutual acknowledgement under subsection (1)(b)(*iii*) is unavailable. *This could be important if the child is born after the death of the father* or is an infant when the father dies." Martin & Harder, p 65 (emphasis added).

[3] One of the exceptions reinforces that for the purpose of intestate succession, posthumous children must be treated in the same manner as children born during the lifetimes of their parents. Subsection (3) indicates that while the permanent termination of parental rights and other court-recognized releases of parental rights operate to "end[] kinship," "termination by emancipation or death" do not. MCL 700.2114(3).

The plain language of the exception at issue here requires proof of two facts: that the natural parent failed to "openly treat the child as his," **and** that the natural parent "refused to support the child." MCL 700.2114(4) (emphasis added). Thus, in crafting subsection (4), the Legislature decreed that two separate and distinct conditions must be fulfilled before a court may foreclose a parent's right to intestate inheritance from a child. The Legislature's use of the word "and" demonstrates that proof of *both* conditions is required. "Plainly, the use of the conjunctive term 'and' reflects that *both* requirements must be met[.]" *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 33; 732 NW2d 56 (2007) (emphasis in original), overruled in part on other grounds *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455; 795 NW2d 797 (2010). "[T]he words ["and" and "or"] are not interchangeable and their strict meaning should be followed when their accurate reading does not render the sense dubious and there is no clear legislative intent to have the words or clauses read in the conjunctive." *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50-51; 575 NW2d 79 (1997) (quotation marks and citation omitted). The Legislature intended a dual showing of parental malfeasance before an intestate inheritance may be precluded: both economic **and** emotional malevolence. *Turpening* supports this view: "[T]he statute's meaning is clear that a natural parent is barred from inheriting except if the natural parent 'openly treated the child as his' *and* 'has not refused to support the child.' " *Turpening*, 258 Mich at 468 (emphasis in original).

No evidence suggests that Carl Cedric Umble "refused" to support Carl Koehler. As this Court noted in *Turpening*, 258 Mich App at 467, a "refusal" reflects "an act of the will." (Quotation marks and citation omitted.) Carl Cedric Umble died before Carl Koehler was born. He could hardly have "refused" to support a child he never met. That Carl Cedric Umble never *actually* "supported" Carl Koehler is simply irrelevant; were that the test, subsection (4) would jeopardize inheritance rights flowing from most posthumous children.[4] The statute requires that Carl Cedric Umble "refused" to support his child. And Bierkle bore the burden of establishing such a refusal, as she moved for summary disposition under MCR 2.116(C)(8) on this issue.[5]

V

More fundamentally, we agree with the probate court that the Legislature never intended that subsection (4) would apply to a posthumous child.

---

[4] The dissent asserts that to be entitled to inherit through the estate of a deceased child, a parent must always affirmatively prove that he or she acknowledged the child and did not fail to support the child before the child's death. We do not read the statute in this fashion. We further observe that in the case of a posthumous child, such proofs are likely impossible. Counsel in this case conceded at oral argument that they presented all the evidence that is available. A remand, advocated by the dissent, would be a meaningless exercise.

[5] "In a contested proceeding, pretrial motions are governed by the rules applicable in civil actions in circuit court." MCR 5.142. As a matter of procedure, Bierkle had come forward with proof, as she was the moving party, that the predeceased natural father failed to acknowledge or refused to provide support to the unborn child at the time of the father's death.

MCL 700.2114(4) is based on the 1990 version of the Uniform Probate Code, Section 2-114(c). The prior UPC's language was almost identical to the EPIC's:

> Inheritance from or through a child by either natural parent or his [or her] kindred is precluded unless that natural parent has openly treated the child as his [or hers], and has not refused to support the child. [Alterations in original.][6]

The Reporter's Comment to this section of the UPC states: "The phrase 'has not refused to support the child' refers to the time period during which the parent has a legal obligation to support the child." *Id.* Obviously, Carl Cedric Umble never had a "legal obligation" to support Carl Koehler. The UPC aside, we reach the same conclusion based on the language and structure of the EPIC.

A central purpose of MCL 700.2114 is to abrogate the common-law rule that denied nonmarital children any right to inherit from their biological fathers. The first sentence of § 2114(1) provides that with three exceptions, "for the purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, *regardless of their marital status*." (Emphasis added.) This subsection of the EPIC proclaims that nonmarital children may inherit through intestacy, assuming parentage has been satisfactorily established.

At the outset of the EPIC's provisions regarding intestate succession, posthumous children are included as potential heirs. MCL 700.2114(1)(a) provides that a child "conceived" during a marriage is presumed to be the child of both natural parents. And since marital and nonmarital children are treated alike, the rule that the parent-child relationship controls intestate inheritance applies equally to both posthumous and nonmarital children. The EPIC also recognizes the rights of posthumous children in MCL 700.2108 ("An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth."). And that Ernest Umble was Carl Koehler's half-brother is of no moment, as "a relative of the half blood inherits the same share he or she would inherit if he or she were of the whole blood." MCL 700.2107.

In determining whether MCL 700.2114(4) applies to posthumous children, our job is "to construe statutes, not isolated provisions." *Graham Co Soil & Water Conservation Dist v US ex rel Wilson*, 559 US 280, 290; 130 S Ct 1396; 176 L Ed 2d 225 (2010) (quotation marks and citation omitted). "[T]o discern the Legislature's intent, statutory provisions are not to be read in isolation; rather context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010).

The EPIC provides a discrete mechanism for a nonmarital child born after his father's death to obtain a judicial determination of paternity for inheritance purposes. Given this right to *establish* paternity despite a father's untimely demise, it makes little sense to construe the EPIC as creating a virtually impenetrable barrier to the flip side—inheritance by the paternal family

---

[6] When the UPC was amended in 2008, the drafters omitted subsection (c).

through the posthumous child. A father who dies before his child is born is incapable of "treating the child as his." Despite a father's death, the father's family may nevertheless have treated the child as "theirs," serving as an important emotional and financial support system for the child and mother. Evidence of a deceased parent's attitude toward an unborn child is unlikely to exist when the child's birth occurred many years before the emergence of the heirship dispute, or the parent died in the early stages of a pregnancy. Lengthy investigations of long-forgotten parental intent contravene another central purpose of the EPIC: "[t]o promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's survivors." MCL 700.1201(c).[7]

That posthumous children may inherit under Michigan's law of intestate succession reflects our Legislature's belief that consanguinity—biology—generally dictates inheritance rights. The exceptions to this principle are narrowly drawn to exclude parents who have lost their parental rights through adoption or other court order, or parents who *could* have lost their parental rights because they ignored and economically neglected their child. Bierkle's construction of MCL 700.2114(4) would defeat the purposes of MCL 700.2114 by forcing the descendants of a posthumous child to prove that the parent would have acknowledged and supported the child had the parent survived. The policy underlying subsection (4) is to punish bad parents, see *Turpening*, 258 Mich App 464, not to erect evidentiary burdens and barriers constraining intestate succession when a relative of a parent seeks to inherit through a dead child's estate.

---

[7] Although they are interesting, the two cases cited by the dissent lack any relevance here. *In re Estate of Poole*, 328 Ill App 3d 964, 767 NE2d 855 (202), involved the construction of an intestacy scheme markedly different from the EPIC. Under 755 ILCS 5/2-2, the application of other Illinois statutes governing intestate succession from or through a child born out of wedlock depends on whether "both parent are eligible parents." 755 ILCS 5/2-2 defines an "eligible parent" as "a parent of the decedent who, during the decedent's lifetime, acknowledged the decedent as the parent's child, established a parental relationship with the decedent, and supported the decedent as the parent's child." By defining an "eligible parent" in this fashion, Illinois specifically preconditions a parent's ability to inherit on parental support and acknowledgment.

The Mississippi statute at issue in *Williams v Farmer*, 876 So 2d 300 (Miss, 2004) similarly differs from the EPIC. In Mississippi, "the natural father of an illegitimate and his kindred shall not inherit . . . [f]rom and through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child." Unlike the EPIC, both the Mississippi and Illinois statutes specifically assign the acknowledgment and support obligations as prerequisites to a parental claimant's prima facie proofs.

Applying subsection (4) to a nonmarital, posthumous child contradicts the central thrust of other intestacy provisions of the EPIC. Accordingly, the probate court got it right when it refused to subvert clearly-declared legislative purposes by applying MCL 700.2114(4) to the facts of this case.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro