*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF TERRY L. SEYBERT.

SHANNON MARIE PARKER, Personal
Representative of the ESTATE OF TERRY L.
SEYBERT,

        Appellant,

and

DONAVIEVE L. SEYBERT, former Personal
Representative of the ESTATE OF TERRY L.
SEYBERT,

        Other Party,

v

AARON WISE,

        Appellee.

FOR PUBLICATION
January 20, 2022
9:10 a.m.

No.   355647
Kalamazoo Probate Court
LC No.   2020-000056-DE

Before:  CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

M. J. KELLY, J.

Shannon Parker, the personal representative of the Estate of Terry L. Seybert, appeals by delayed leave granted[1] the probate court order compelling her to submit a genetic sample for the purpose of determining the probability that appellee, Aaron Wise, is the biological son of Seybert. For the reasons stated in this opinion, we reverse and remand for further proceedings.

---

[1] *In re Estate of Seybert*, unpublished order of the Court of Appeals, entered January 7, 2021 (Docket No. 355647).

## I.  BASIC FACTS

Seybert died intestate in 2019, and his body was cremated.  The first personal representative of Seybert's estate was Seybert's mother; however, Seybert's mother was removed as personal representative, and Parker, Seybert's daughter,[2] was appointed successor personal representative of Seybert's estate in March 2020.  In April 2020, Wise filed an ex parte petition for a temporary restraining order, asserting that he was an heir of Seybert and requesting that Parker be temporarily restrained from dispersing any assets of the estate.  At a hearing on his petition, Wise stated that he received information after Seybert's death that led him to believe that he was Seybert's son.  The probate court was further informed that Seybert's mother, Seybert's brother, and Wise had all provided DNA samples, which, according to Wise, revealed a "99.8 percent probability of relationship" between Seybert and Wise.  The probate court scheduled an evidentiary hearing on the issue of paternity and ordered that Parker not make any distributions from Seybert's estate until the court determined whether Wise was an heir.  Thereafter, Wise moved to compel Parker to submit to genetic testing so that Wise could demonstrate that Seybert was his biological father.  According to the record, there was no genetic material of decedent remaining after he was cremated, and the genetic testing from Seybert's mother and brother was inconclusive with regard to whether Wise was Seybert's child or whether he was merely biologically related to Seybert.  The probate court granted the motion, and this appeal by delayed leave granted follows.

## II.  MOTION TO COMPEL

## A.  STANDARD OF REVIEW

Parker argues that the trial court erred by ordering her to provide a DNA sample for genetic testing.  This Court reviews for an abuse of discretion a trial court's decision on a motion to compel discovery.  *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).  Issues of statutory interpretation are reviewed de novo, *In re Haque Estate*, 237 Mich App 295, 299; 602 NW2d 622 (1999), as are issues involving the interpretation of the court rules, *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 374; 689 NW2d 145 (2004).

## B.  ANALYSIS

MCL 700.2114, a provision of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, provides, in pertinent part:

> (1) Except as provided in subsections (2), (3), and (4), for purposes of intestate succession by, through, or from an individual, an individual is the child of his or her natural parents, regardless of their marital status.  The parent and child relationship may be established in any of the following manners:

---

[2] Seybert supported Parker with child support and acknowledged his paternity.  Although Wise suggested that he may eventually challenge Parker's status as an heir, no such challenge has been raised at this time.

* * *

(b) If a child is born out of wedlock or if a child is born or conceived during a marriage but is not the issue of that marriage, a man is considered to be the child's natural father for purposes of intestate succession if any of the following occur:

(*i*) The man joins with the child's mother and acknowledges that child as his child by completing an acknowledgment of parentage as prescribed in the acknowledgment of parentage act, 1996 PA 305, MCL 722.1001 to 722.1013.

(*ii*) The man joins the mother in a written request for a correction of certificate of birth pertaining to the child that results in issuance of a substituted certificate recording the child's birth.

(*iii*) The man and child have established a mutually acknowledged relationship of parent and child that begins before the child becomes age 18 and continues until terminated by the death of either.

(*iv*) The man is determined to be the child's father and an order of filiation establishing that paternity is entered as provided in the paternity act, 1956 PA 205, MCL 722.711 to 722.730.

(*v*) *Regardless of the child's age or whether or not the alleged father has died, the court with jurisdiction over probate proceedings relating to the decedent's estate determines that the man is the child's father, using the standards and procedures established under the paternity act*, 1956 PA 205, MCL 722.711 to 722.730.

(*vi*) A child who is not conceived or born during a marriage is an individual born in wedlock if the child's parents marry after the conception or birth of the child. [Emphasis added.]

The Paternity Act was created as a procedural vehicle for determining the paternity of children born out of wedlock. *In re MKK*, 286 Mich App 546, 557; 781 NW2d 132 (2009). The Paternity Act provides four ways by which a court may establish paternity by an order of filiation. *In re Koehler Estate*, 314 Mich App 667, 677; 888 NW2d 432 (2016), quoting MCL 722.717(1). MCL 722.717(1) provides:

In an action under this act, the court shall enter an order of filiation declaring and providing for the support of the child under 1 or more of the following circumstances:

(a) The finding of the court or the verdict determines that the man is the father.

(b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity.

(c) The defendant is served with summons and a default judgment is entered against him or her.

(d) Genetic testing under [MCL 722.716] determines that the man is the father.

In turn, MCL 722.716(1) provides:

In a proceeding under this act before trial, the court, upon application made by or on behalf of either party, or on its own motion, *shall order that the mother, child, and alleged father* submit to blood or tissue typing determinations that may include, but are not limited to, determinations of red cell antigens, red cell isoenzymes, human leukocyte antigens, serum proteins, or DNA identification profiling, to determine whether the alleged father is likely to be, or is not, the father of the child. . . . [Emphasis added.]

Parker argues that, because the probate court had to determine whether Seybert was Wise's father using "the standards and procedures established" under the Paternity Act, MCL 700.2114, and because the Paternity Act only authorizes a trial court to order the child, the mother, and the alleged father to provide a DNA sample, MCL 722.716(1), the probate court erred by ordering her, an alleged sibling of Wise, to provide a DNA sample. We agree. The plain language of the relevant statutes provide that a child born out of wedlock may have a rightful claim to a decedent's estate if the child can establish that the decedent was his or her biological father through the process provided in the Paternity Act, which, by its plain language, requires the trial court to order blood- and tissue-typing determinations from the mother, the child, and the alleged father when determining paternity. No language in the Paternity Act permits a trial court to order the potential father's other children to submit to a blood or tissue typing determination, and we will not read such a requirement into an unambiguous statute. See *Mich Edu Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011) (stating that nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself). Additionally, given that the legislature expressly named three individuals that the court must order testing from, the language used precludes the court from ordering testing from other individuals. See *Bronner v City of Detroit*, ___ Mich ___, ___; ___ NW2d ___ 2021); slip op at 16 n 11 (stating that when interpreting a statute, the negative-implication canon, *expressio unius est exclusion alterius*, means that the "[e]xpress mention in a statute of one thing implies the exclusion of other similar things.") (quotation marks and citation omitted).

The probate court relied on *In re Jones Estate*, 207 Mich App 544; 525 NW2d 493 (1994), when it granted Wise's motion to compel Parker to provide a DNA sample. In *In re Jones Estate*, the decedent, David Anthony Jones, died intestate in May 1991 at the age of 27. *Id.* at 546. The decedent left two uncontested heirs. *Id.* In July 1991, Lavena Turner, the mother of David Anthony Jones II (David II), filed a petition to determine heirs. She claimed that David II was the son of the decedent. *Id.* at 546-547. The probate court determined that David II was the son of the decedent, and in doing so, it held that MCL 700.111(4) violated equal protection. *Id.* at 546,

548. MCL 700.111(4), a provision of the Revised Probate Code,[3] provided that a man was the natural father of a child born out of wedlock if any of the following occurred: (a) "The man joins with the mother of the child and acknowledges that child as his child in a writing executed and acknowledged by them . . . ."; (b) "The man joins with the mother in a written request for a correction of certificate of birth pertaining to the child . . . ."; or (c) "The man and the child have borne a mutually acknowledged relationship of parent and child . . . ." *Id.* at 548-549.

The decedent's mother (who was the personal representative of the estate) and the mother of the decedent's two uncontested heirs appealed the probate court's finding. *Id.* at 546-547. This Court affirmed the probate court's finding that David II, who was only 110 days old at the time of the decedent's death, had never acknowledged a parent-child relationship with the decedent, and therefore, MCL 700.111(4)(c) (the third circumstance quoted above) was not satisfied. *Id.* at 548. But the Court disagreed with the probate court's conclusion that, because David II could not satisfy MCL 700.111(4)(c), MCL 700.111(4) unconstitutional. *Id.* at 551 Nonetheless, on the basis of *Easley v John Hancock Mut Life Ins Co*, 403 Mich 521; 271 NW2d 513 (1978), the Court agreed that the parties should be given an opportunity to present additional evidence regarding whether David II was the decedent's child. *Id.* at 552. It explained:

> In *Easley*, our Supreme Court held that a judicial determination of paternity entitled a child born out of wedlock to share in the father's estate notwithstanding the child's failure to satisfy the requirements of former MCL 702.83. In *Easley*, the decedent had acknowledged the child as his own and support orders had been entered by a circuit court. The Supreme Court concluded that the order of filiation granted the right to an equal share with the other children of the decedent's estate, and that to hold otherwise would deny equal protection of the laws because it would leave children whose paternity had been judicially established in an inferior position. *Easley, supra,* pp 524-525.

> Although MCL 700.111(4) has been amended, effective October 19, 1993, to include that an order of filiation establishing paternity is sufficient for a child born out of wedlock to inherit from an intestate father, that amendment is not applicable to this case because the determination of heirs is to be governed by statutes in effect at the time of death. *In re Adolphson Estate*, 403 Mich 590, 593; 271 NW2d 511 (1978).

> However, this Court recently held that *Easley* established a nonstatutory, judicial method of establishing a right to inherit that continued after the enactment of MCL 700.111(4) in 1979. *In re Miller Estate*, 207 Mich App 19; 524 NW2d 246 (1994). Therefore, the parties in the instant case are to be given the opportunity to determine paternity pursuant to the Paternity Act, MCL 722.711 *et seq*. As noted by appellants, one method of proving paternity in this case is to utilize a DNA profile by using the child's tissue and the tissue of either decedent or decedent's

---

[3] The Revised Probate Court was repealed and replaced by EPIC. *In re Leete Estate*, 290 Mich App 647, 661; 803 NW2d 889 (2010).

mother. Such a judicial determination of paternity would then be sufficient for David II to inherit from the intestate decedent's estate. [*Id.* at 552-553.][4]

In this case, the probate court indicated that it viewed *In re Jones Estate* as controlling because, in that case, the Court permitted the probate court to consider a DNA profiling using the tissue of the child and the decedent's mother, an individual that was "not specifically contained within the Paternity Act."

Yet, *In re Jones Estate* is not controlling on this issue. Although the Court in *In re Jones Estate* stated that the probate court could consider a DNA profile that used the tissue of David II and the decedent's grandmother, there is no indication that the decedent's grandmother was not willing to voluntarily provide a sample of her DNA. She, along with the mother of the decedent's two uncontested heirs, was appealing the probate court's determination that David II was an heir of the decedent and she wanted the opportunity to present additional evidence on the issue whether David II was the decedent's heir. *In re Jones Estate*, 207 Mich App at 546-547, 552. The Court did not consider and decide whether a probate court could order an individual who is not willing to provide a DNA sample and who is not specifically mentioned in the Paternity Act to provide a DNA sample. Therefore, although the Court in *In re Jones Estate*, held that additional DNA profiles could be utilized to determine paternity, it did not and could not contravene the statutory language that requires the court to only order certain individuals to submit DNA samples.

Wise also relies on *In re Koehler Estate*, 314 Mich App 667. One of the issues in *In re Koehler Estate* was whether Carl Cedrick Umble was the paternal grandfather of the decedent, who had no spouse, children, or siblings and whose parents had predeceased him. *Id.* at 670. The probate court determined that Umble was the biological father of the decedent's father, Carl Koehler. *Id.* at 673. This Court affirmed the finding, stating, "Under MCL 722.717(1)(a), the probate court had the authority to review the totality of the evidence and to determine that Carl Cedrick Umble was Carl Koehler's father." *Id.* at 677-678. Nothing in *In re Koehler Estate*, however, provides that the probate court may order an individual other than the three individuals identified in MCL 722.716(1) to submit a DNA sample for genetic testing. Instead, taken together, *In re Jones Estate* and *In re Koehler Estate* only stand for the proposition that if DNA samples from other individuals are voluntarily submitted, they may be considered under the totality of the circumstances when making a judicial determination of paternity.

In sum, a probate court may use "the standards and procedures established" under the Paternity Act to determine whether a decedent is the father of a child. MCL 700.2114(1)(b)(*v*). Under the Paternity Act, a trial court has authority to order "the mother, child, and alleged father" to provide a DNA sample. MCL 722.716(1). There is no provision in the Paternity Act that allows a trial court to order any other person, such as an alleged sibling of the child, to provide a DNA

---

[4] In *In re Miller Estate*, 207 Mich App at 25 n 6, the Court noted that the amendment to MCL 700.111(4), effective October 19, 1993, codified "*Easley*'s holding." The amendment provided a fourth way for a man to be found the natural father of a child born out of wedlock: "[t]he man has been determined to be the father of the child and an order of filiation establishing that paternity has been entered pursuant to the paternity act . . . ." The *Easley* holding remains codified in MCL 700.2114(1)(b)(*v*).

sample.  Accordingly, under "the standards and procedures established" under the Paternity Act, the probate court could not order her to provide a DNA sample.

Moreover, even if we were to conclude that "the standards and procedures established" under the Paternity Act did not prohibit the probate court from ordering Parker to provide a DNA sample, Wise must still have a legal basis for his request for a sample of Parker's DNA.  Wise contends that such a sample may be compelled under MCR 2.310(B)(1) or MCR 2.311.  However, although the court rules may control in situations where a statutory scheme is silent, they do not control matters specifically addressed by a statute.  See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 190; 732 NW2d 88 (2007).  In this case, given that the Paternity Act specifically addresses the only three individuals that a court must order to submit to DNA testing, the court rules cannot be used to subvert the plain language of the statute.

And, even if the court rules could be used to require genetic testing not contemplated under the plain language of MCL 722.716(1), we do not agree that MCR 2.310(B) or MCR 2.311 provide a legal basis to compel Parker to submit a sample of her DNA for genetic testing.  MCR 2.310(B)(1), provides, in pertinent part:

> A party may serve on another party a request
>
> (a) to provide and permit the requesting party, or someone acting for that party,
>
> (i) to inspect and copy designated documents or
>
> (ii) to inspect and copy, test, or sample other tangible things that constitute or contain matters within the scope of MCR 2.302(B) and that are in the possession, custody, or control of the party on whom the request is served[.]

In turn, MCR 2.311 provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control.  The order may be entered only on motion for good cause with notice to the person to be examined and to all parties.  The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination.

Although Wise relies on both court rules, MCR 2.311 is the only one that is arguably applicable. MCR 2.311 specifically addresses instances where a party—such as Parker—may be compelled to submit to a physical examination.  Because requiring a person to submit a DNA sample for genetic testing, therefore, falls squarely within the scope of MCR 2.311, not within MCR 2.310(B)(1), we must apply it over the more general provision in MCR 2.310(B).  See *Miller v*

*Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008) (recognizing that more specific rules should prevail over more general rules).[5]

MCR 2.311(A) allows for an examination of a party when that party's mental or physical condition (including blood group) is at issue. In this case, however, there is no issue concerning Parker's mental or physical condition. Her status as Seybert's heir has never been challenged.[6] Consequently, Wise is not entitled to a sample of Parker's DNA under MCR 2.311(A).

Reversed and remanded for further proceedings. Parker may tax costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro

---

[5] We also note that, unlike MCR 2.310(B)(1), MCR 2.311 provides for a number of protections for parties being required to submit to physical examination, which help protect the legitimate privacy interest an individual has in his or her physical (or mental condition). Given the undisputed privacy interest a person has in his or her DNA, we discern no basis to conclude that by the mere happenstance that DNA can be collected from a tangible source—such as blood or saliva—the court rules allow for its compulsion under MCR 2.310(B), as opposed to MCR 2.311, which is both more specific to the required examination and more protective of the interests of the individual being compelled to submit to examination.

[6] At the August 12, 2020 hearing, Wise suggested that he could file a petition to challenge the paternity of Parker and that such a challenge would require Parker to submit for a physical examination under MCR 2.311(a). But he was not specifically alleging that Parker was not an heir of Seybert.